Barney, President of the U. S. Express Co., v. Daniels and Others.

*L. Barbour* and *C. P. Jacobs,* for appellant.

*G. H. Chapman* and *J. S. Tarkington,* for appellee.

---

BARNEY, President of the United States Express Co., v. DANIELS and Others.

EXPRESS COMPANY.—*Statement Filed in Recorder's Office.—Statute Construed.*—
A statement filed by an express company in the recorder's office, under the act of March 5th, 1855 (1 G. & H. 327), showed that the business of the company was managed, and its property and effects were owned, by five trustees, the names of four of whom and their respective places of residence were given; and it was stated that there was one vacancy, and that "the persons interested as *cestui que trust* are the stockholders of said company, who change from day to day, and of whom it is impossible to make an accurate statement, owing to the frequency of such changes," &c.

*Held,* that this was a substantial compliance with the requirement of section 2 of said act, that the statement so filed shall show the full name of every member of such company and his proper place of residence.

SAME.—*Capital Employed.*—Such statement must show the entire amount of capital employed by the company in the express business, and not simply the probable amount employed in in its business in this State.

SAME.—*Agent.—Suit on Bond.*—If merely the amount of capital employed in the business of the company in this State be shown, this insufficiency of the statement is a good defense to a suit by the company against an agent thereof in the county where such statement is filed and the sureties upon

Barney, President of the U. S. Express Co., *v.* Daniels and Others.

his bond given for the faithful performance of his duties as agent, to recover money received by him in the course of his business as agent.

APPEAL from the Marion Civil Circuit Court.

This was an action upon an obligation executed by H. W. Daniels, as principal, and the other defendants as his sureties, to the plaintiff, as President of the United States Express Company, dated January 13th, 1860. The obligation was a joint and several one, and in the penal sum of twenty-five hundred dollars. It recited the appointment of Henry W. Daniels as agent at Indianapolis, of the express company, and was conditioned that he should faithfully perform his duties as such agent, so that no loss or damage should occur directly or indirectly to the company, in consequence of any act, omission, failure, laches, unfaithfulness, or dishonesty, on his part, in the discharge of his duties as agent.

The complaint upon this bond charges, that H. W. Daniels retained in his hands, and refused to pay over, a balance of $251.45, belonging to the express company, being money received by him in the course of his agency, during the period covered by the bond, and that he refused to account.

Issues were made, which, by agreement of the parties, were submitted to the court for trial, without a jury. The court made a special finding, which presents the questions discussed in the case, and renders a notice of the pleadings, subsequent to the complaint, unnecessary.

The finding of the court is as follows:

"Come the parties, and the court, now being sufficiently advised, finds specially as follows:

"*First.* That all the several material averments in the complaint contained are substantially true, and that if no valid matter of defense appeared, the plaintiff would be entitled to recover of the defendants the sum of two hundred and fifty-one dollars and forty-five cents, with interest thereon since the 12th day of June, 1860.

"But the court further find,

"*Second.* That the written obligation in the complaint

mentioned was executed by the defendants to the plaintiff, as president of, and for the use and benefit of, the United States Express Company, to secure the faithful performance by said Henry W. Daniels of his duties as agent of said express company in Marion county, Indiana.

"*Third.* That said H. W. Daniels, upon the execution of said bond, entered upon the discharge of his duties as such agent; and that all the moneys in the complaint and bill of particuars mentioned, including the above balance of two hundred and fifty-one dollars and forty-five cents, were received by him after the execution of said bond, and in the course of his business and duties as such agent.

"*Fourth.* That at all times since the 25th day of April, 1856, and covering the period of all the transactions in the complaint mentioned, the said United States Express Company was a company or association of persons doing business as express carriers, within the spirit and meaning of the act of the legislature, entitled "an act declaring express companies to be common carriers, and providing for the safety of articles intrusted to their care," approved March 5th, 1855.

"*Fifth.* That the written statement filed by said express company in the office of the recorder of said Marion county, and recorded therein June 6th, 1856, as and for a compliance with the provisions of said act, was not and is not in substantial compliance with the requirements of said act, and, therefore,

"*Sixth.* Because of the said insufficiency of said statement, the court finds for the defendants."

The following is the statement filed by the express company in the office of the recorder of Marion county, referred to in the finding of the court, viz.:

"Statement of the United States Express Company, State of Indiana, Marion county:

"A statement respecting the affairs of the United States Express Company, made pursuant to an act of the Legislature of the State of Indiana, entitled 'an act declaring express companies to be common carriers, and providing for

the safety of articles intrusted to their care,' approved March 5th, 1855.

"The business of said company is managed and its property and effects are owned by five trustees, whose full names and proper places of residence are as follows, viz.: Danford N. Barney and James McKay, both of the city of New York; Elijah P. Williams, of the city of Buffalo, in the State of New York; and Ashbel H. Barney, of the city of Cleveland, in the State of Ohio; and one vacancy. The persons interested as *cestui que trust* are the stockholders of said company, who change from day to day, and of whom it is impossible to make an accurate statement, owing to the frequency of such changes.

"The amount of capital employed in the business of said company, in the State of Indiana, is, as nearly as the sum can be ascertained, five thousand dollars.

"And we, the subscribers, the trustees above named, do hereby agree that legal process served upon any authorized agent of said company, in said county, shall be deemed and taken as good service upon said company and on ourselves.

"In witness whereof, we have hereunto subscribed our names, this 25th day of April, 1856."

This statement was signed by the four trustees named, and was duly sworn to by them.

A motion for a new trial was made and overruled, and the appellant excepted. Final judgment was then rendered for the defendants.

ELLIOTT, J.—The questions presented in the case are, first, as to the sufficiency of the statement filed by the express company in the recorder's office, under the act of the legislature; and second, if the statement is not a substantial compliance with the act, is that fact sufficient to defeat the appellant's right to recover on the bond, under the facts presented by the finding of the court?

The act referred to provides, "Sec. 1. That all persons, association of persons, or companies, usually called express

companies, regularly engaged, or hereafter to be engaged in the business of carrying or transporting packages or parcels of bank notes, coin, merchandize, or other articles, over or upon any of the railroads, rivers, canals, or other thoroughfares in this State, and receiving or agreeing to receive, compensation for such services, shall be, and they are hereby declared, common carriers, and shall be subject to all the liabilities to which common carriers are subject according to law.

"Sec. 2. Such persons, associations, or companies, shall file in the office of recorder of each county in which their business is conducted, or where they may have an agency or office, a statement showing the full name of every such person and member of every such association or company, and also his or her proper place of residence, and the amount of capital employed in such business; and also an agreement that legal process served upon any agent of said person or persons, association, or company, in such county, shall be deemed and taken as good service upon such person or persons, association or company; and it shall be the duty of the recorder to make a record of the same, and also to publish in a newspaper of the county, if there be a newspaper, or otherwise to post up in three of the most public places in the county along the proper route or line, a full and complete copy of such statement and agreement, which shall be duly certified by said recorder. Such statement shall be signed by the persons and members of such associations or companies, and shall be verified by oath or affirmation before the same is admitted to record. * * * Until such notice be given it shall not be lawful for any person, association, or company, to transact the business named in the first section of this act in such county; and any person, member of any association or company, or any agent thereof, violating the provisions herein contained, shall, for every such offense, be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than ten nor more than one hundred dollars, in the name of the treasurer of the county: *Provided,* that

nothing contained in this section shall be construed to affect the rights or privileges of persons, citizens of this State, engaged in the ordinary transportation of merchandise, produce, or other articles, in wagons or other conveyances."

It is claimed by the appellees' counsel that the statement filed by the express company in the office of the recorder is not a substantial compliance with the statute, because it does not show the full names of all the members of the company, together with their proper places of residence.

The statement shows that the business of the company is managed, and its property and effects are owned, by five trustees, the names of four of whom, and their respective places of residence, are given; and it is futher stated that there is one vacancy; and that "the persons interested as *cestui que trust* are the stockholders of said company, who change from day to day, and of whom it is impossible to make an accurate statement, owing to the frequency of such changes."

We think this a sufficient statement of the names and residence of the members of the company, within the spirit and object of the law. We must presume that it was not intended by the statute to make a useless or impossible requirement. The statement shows that the property and effects of the company are owned by the trustees whose names are given, and the business conducted and managed by them. They are the trustees of an express trust, and as such possess the power to sue, and may be sued. They agree that process served on any agent of the company shall be deemed and taken as good service upon the company and themselves. The names and residence of the stockholders on a given day, if stated, would answer no beneficial purpose, as they are constantly changing, and would only be calculated to mislead, should it be attempted to include them all in a suit. The purpose of the statute in that respect seems to be answered by the statement made.

Another objection to the statement is, that it does not show the whole *amount of capital employed by the company in*

*its business*, but only the probable amount employed in its business *in this State.* This objection, we think, is well taken. These express companies have been called into existence by the widely extended system of railroads in the United States, with which they are immediately connected. The United States Express Company was organized in the State of New York, where three of the trustees named in the statement filed reside. It transacts a large business, extending, at least, into many of the states, and through its multiplied agencies receives daily a large number of valuable packages for transmission. The capital employed in its business constitutes a common fund, and is alike liable for all its obligations. And it was evidently the intention of the statute to require a statement of the entire amount of the capital employed by such companies in the express business, and not merely the amount that might be employed in this State.

It remains to be considered whether the fact that the statement filed by the express company did not comply with the requirement of the statute, constitutes a valid defense to the action on the bond.

We concur in the argument on behalf of the appellant, that a person or company proposing to do an express business, before filing the statement required by the statute, may lawfully make all the necessary preliminary arrangements, such as fitting up offices, arranging routes, and appointing agents; and hence the appointment of Henry W. Daniels as agent and taking from him the bond in suit to secure a faithful discharge of his duties, was not unlawful. For, in the absence of a showing to the contrary, it must be presumed that the bond, when given, was only intended to secure the performance of lawful acts. It was not therefore void in its inception. But it appears by the finding of the court that the money sought to be recovered in this suit was received by Henry W. Daniels, the principal in the bond, for and in the transaction of the business of the company as express carriers. Such business being unlawful,

because of the insufficiency of the statement filed by the company in the recorder's office, did a failure to pay over the money constitute a breach of the bond? This is the second time this case has been before this court. In the former examination of it (see 22 Ind. 207), the question just stated was passed upon. It was then said, that if "the bond was given upon a contract of agency in the performance of legal acts only, then the company has no right to require the agent to perform illegal acts, and the bond would not extend to anything connected with such acts, because they were not covered by the bond. See Story Agency, § 344 *et seq.*" We adhere to that opinion. It must be remembered that this is not a suit against the agent for money had and received to the use of the principal; but it is a suit on the bond against the agent and his sureties, to recover money received by the former in the transaction for the principal of illegal acts. The sureties were only bound for the faithful performance of the agent in lawful transactions, and the money sought to be recovered, having been received by the agent for and in the performance of acts in violation of law, is not covered by the bond, and the finding and judgment of the court are therefore correct.

The cases referred to by the appellant in support of the argument that the defects in the statement filed by the company with the recorder cannot be made available in a collateral suit on the agent's bond, are not in point, and do not sustain the position.

Judgment affirmed, with costs.

*L. Barbour, C. P. Jacobs, T. A. Hendricks, O. B. Hord,* and *A. W. Hendricks,* for appellant.

*A. G. Porter, B. Harrison,* and *W. P. Fishback,* for appellees.