THE UNITED STATES EXPRESS COMPANY *v*. LUCAS and Others.

ATTACHMENT.—*Claims Filed Under.*—*Issue Between Attaching Creditors.*—
Where an action is brought on a claim, and the plaintiff takes out an attach-
ment, and other creditors file their claims under the attachment proceedings,
and the debtor fails to defend, and said other plaintiffs in the attachment file
an affidavit that the attached property is insufficient to pay all the claims, and
that their claims are just, and that the claim of the original plaintiff is not a
legal liability against the defendant, and that said defendant will not appear
and defend the action, and they ask to be allowed to defend, it is proper such
defense should be permitted.

FOREIGN CORPORATION.—*Express Company.*—*Insufficient Statement.*—*Liabil-
ity of Agent.*—Where a foreign express company doing business in this State
has failed to file in the proper recorder's office a statement which is a full com-
pliance with the requirements of the statute, stating the amount of capital em-
ployed in its business; although such company cannot recover on a bond given
by an agent for the discharge of the duties of said agency, still it may main-
tain an action against the agent to recover for money received in the course
of his agency to the use of the company.

APPEAL from the Huntington Circuit Court.

DOWNEY, J.—This was an action commenced by the appel-
lant against Lucas, and in connection therewith an attach-
ment was sued out against the property of Lucas, on the
ground that he had left the State with intent to defraud his
creditors. The plaintiff's claim against Lucas was for money
had and received by him to and for the use of the plaintiff.
Lucas made default. Hunter and several other creditors of
Lucas, having filed their claims under the attachment, and
become parties to the suit, were permitted by the court to
defend against the claim of the express company, on the
ground that Lucas was absent, was not intending to make
any defense thereto, and that the same was unfounded.

They filed an answer of two paragraphs, but as the first
was afterward withdrawn, no further notice need be taken of
it. The second paragraph alleges that at the time of receiv-
ing the money charged in plaintiff's bill of particulars, and
for a long time before, and ever since, the United States Ex-
press Company, plaintiff in this suit, was and is an associa-

tion of persons usually called an express company, and also a foreign corporation, and were then, and ever since have been engaged in the business of carrying and transporting packages and parcels of money, bank notes, merchandise, and other articles over and upon the railroads, rivers, and other thoroughfares in this State and other states of the Union, and receiving and agreeing to receive compensation therefor, and were further engaged in the business of making collections and purchasing goods, merchandise, etc., in all the various towns and cities of the United States, and receiving compensation for such services; and that said company had employed said John H. Lucas to act as their agent in and for Huntington county, in the State of Indiana; that all the moneys mentioned in the complaint as having been received by said Lucas, were received by him in the course of his employment and agency in the business aforesaid in said county; that the business so carried on by said company, and so conducted by said company through said agent, was wholly unlawful, in this, to wit: that at no time, at or during the employment of said Lucas as their agent, nor at any time before or since the employment of said Lucas as their agent, or at the time said money came into his hands as such agent, as mentioned in the complaint and bill of particulars, did such express company furnish, though often requested, to said Lucas the power of attorney, commission, appointment, or other authority, under or by virtue of which he was empowered to act as such agent, nor did said company or the said Lucas, their agent, file in the office of the clerk of the circuit court of Huntington county, Indiana, before commencing the duties of said agency, nor either of them at any time since file, any duly authenticated order, resolution, or other sufficient authority of the board of directors, trustees, or managers of said United States Express Company, authorizing citizens or residents of the State, having a claim or demand against said United States Express Company, arising out of any transaction in this State with such agent, to sue for and maintain an action in respect

The United States Express Company *v.* Lucas and Others.

to the same in any court of competent jurisdiction in this State, and authorizing service of process in such action on such agent to be valid service on said corporation, and that such service should authorize judgment, etc., against said United States Express Company; all of which facts said company very well knew; nor at any time since, nor while said Lucas was engaged in the employment and agency, did said express company, as then organized, file with the recorder of Huntington county, or in the office thereof, and in which said agency was carried on, and in which said United States Express Company had an office all the time aforesaid, a statement showing the full name of every member of said association and company, and the proper place of residence of each such member, and the amount of capital employed in said business, and an agreement that legal process served on such agent of said express company shall be deemed and taken as good service upon said company or association; all of which they wholly omitted to do in the manner and form prescribed by statute in such cases made and provided; and defendants further aver that said United States Express Company is a foreign corporation, and not organized under the laws of the State of Indiana; and defendants further aver that all of the property of said Lucas, subject to execution, will not exceed ten thousand dollars; that the just and valid claims of parties joined in this answer, against which there is no legal defense, will amount to one thousand dollars; that the United States Express Company has filed a claim of ten thousand dollars; that there is a good, valid, and legal defense to the whole of the said claim, but that said Lucas will not defend against the same, nor set up said defense, but will suffer said company to recover the full amount of ten thousand dollars, whereby the property aforesaid will be exhausted and the parties will be unable to recover more than a small part of their claim; wherefore, they ask to file their answer to the complaint of the said United States Express Company against Lucas, and for judgment against said plaintiff for costs.

The plaintiff demurred to this paragraph of the answer, assigning as ground of objection to it, that it did not state facts sufficient to constitute a defense. This demurrer was overruled, and an exception taken.

The plaintiff replied in two paragraphs, but afterward withdrew the first, so that no question is made with reference to it. In the second it is alleged that the company, on the 6th day of June, 1856, filed and caused to be recorded in the office of the recorder of said Huntington county a written statement, a copy of which was therewith filed, and also caused the same to be published in the Indiana Herald, a weekly newspaper printed and published, and of general circulation in said county.

The statement referred to in the reply is as follows:
"STATE OF INDIANA, HUNTINGTON COUNTY, SS:

A statement respecting the affairs of the United States Express Company, made pursuant to an act of the legislature of the State of Indiana, entitled an act declaring express companies to be common carriers, and providing for the safety of articles entrusted to their care, approved March 5th, 1855. The business of said company is managed, and its property and effects are owned by five trustees, whose full names and proper places of residence are as follows: Danford N. Barney and James McKay, both of the city of New York, Elijah P. Williams of the city of Buffalo, in the State of New York, and Asbel H. Barney of the city of Cleveland, in the State of Ohio, and one vacancy. The persons interested as *cestui que trust* are the stockholders of said company, who change from day to day, and of whom it is impossible to make an accurate statement, owing to the frequency of such changes. The amount of capital employed in the business of said company in the State of Indiana is, as nearly as the same can be ascertained, five thousand dollars. And we, the subscribers, the trustees above named, do hereby agree that legal process served upon any authorized agent of said company, in said county, shall be deemed and taken as good service upon said company and ourselves."

Dated the 25th day of April, 1856, and signed and sworn to by the trustees on the 26th day of April, 1856, as to part of them, and on the 31st day of May, 1856, as to the others, before a commissioner for Indiana, in New York, and certified to have been recorded in the office of the recorder of Huntington county on the 6th day of June, 1856. There was also filed an affidavit of the editor and publisher of said newspaper, that the above statement was published in that paper on the 11th and 18th days of June, 1856.

The parties admitted to defend demurred to this paragraph of reply, and the demurrer was sustained, to which the plaintiff excepted.

The plaintiff declining to plead farther, or amend his reply, judgment was rendered for the defendants.

The affidavits or petitions on which the defendants were admitted to defend are set out in a bill of exceptions; the question is reserved, as to the correctness of the action of the circuit court in thus allowing them to defend, and that is the first error properly presented for our consideration. This is a question of practice, and one of some importance. The statute, 2 G. & H. 147, sec. 186, authorizes any creditor of the defendant, upon filing his affidavit and written undertaking, as required of the attaching creditor, at any time before the final adjustment of the suit, to become a party to the action, file his complaint, prove his claim or demand against the defendant, and have any person summoned as garnishee, or held to bail, and propound interrogatories to the garnishee and enforce answers thereto, in like manner as the creditor who is plaintiff. But after a creditor has been thus admitted as a party to the action, can he dispute the claim of the attaching creditor, and can the attaching creditor controvert the correctness of his claim? It is evident that in such cases, where the attached property will not pay all, each creditor has a direct interest in seeing that no more of any claim shall be allowed than is justly due. There must be some mode by which this can be prevented. If it cannot be done in the attachment proceeding, it should be allowed in

some other way.  If there has been personal service on the defendant, or he appears, the plaintiff is entitled to a personal judgment against him.  2 G. & H. 148, section 188.  This the other creditors have no interest in preventing, except so far as it might be ordered to be paid out of the proceeds of the property attached.  The statute provides that "if judgment in the action be rendered for the plaintiff, or one or more of several plaintiffs, and sufficient proof be made of the goods, chattels, rights, credits, moneys and effects in the possession of the garnishee, the court shall also give judgment in favor of the plaintiff or creditors against the garnishee, or the property of the defendant, or both, as the case may require, which may be enforced by execution."  2 G. & H. 149, sec. 190.  Also, "the money realized from the attachment and the garnishees shall, under the direction of the court, after paying all costs and expenses, be paid to the several creditors, in proportion to the amount of their several claims as adjusted, and the surplus, if any, shall be paid to the defendant."  2 G. & H. 150, sec. 192.

"Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves."  2 G. & H. 218, sec. 368.

In holding that the court may allow one or more of the creditors to controvert the claims of one or more of the other creditors, when the defendant does not make a *bona fide* defense, we think we are but carrying out the spirit of the code, which seeks to settle, as far as possible, all questions which may properly arise between the parties in the same suit. The restraint which will result from a fear of incurring the expenses of the litigation will prevent causeless defenses.  In this case, it was stated, under oath, in the application to the court for leave to defend, that the defendant was not appearing and would not defend, that there was a valid defense, etc. We think the court did not err in allowing the defense to be made.  See *Fletcher* v. *Holmes*, 25 Ind. 458.

Another question arises on the ruling of the court in sustaining the demurrer to the second paragraph of the reply. Its insufficiency is urged on the ground that the statement filed by the company in the office of the recorder was defective. The statute, 1 G. & H. 327, sec. 2, requires the statement, among other things, to show "the amount of capital employed in such business." The statement which was made by the company, as above set out, gives only the amount of capital employed by the company in the State of Indiana, and is therefore not in accordance with the law. This question was decided by this court in the case of *Barney* v. *Daniels*, 32 Ind. 19. The language of the learned judge who delivered the opinion in the case is as follows: "Another objection to the statement is, that it does not show the whole amount of capital employed by the company in its business, but only the probable amount employed in its business in this State. These express companies have been called into existence by the widely extended system of railroads in the United States, with which they are immediately connected. The United States Express Company was organized in the State of New York, where three of the trustees named in the statement filed reside. It transacts a large business, extending, at least, into many of the States, and through its multiplied agencies receives daily a large number of valuable packages for transmission. The capital employed in its business constitutes a common fund, and is alike liable for all its obligations. And it was evidently the intention of the statute to require a statement of the entire amount of the capital employed by such companies in the express business, and not merely the amount that might be employed in this State."

The demurrer to the reply was therefore correctly sustained.

The remaining question is as to the sufficiency of the second paragraph of the answer, to which a demurrer was filed, and which was overruled. The paragraph of the answer in question shows that the company and Lucas, the agent, had not complied with the requirements of the statute,

and that the money sued for was received by Lucas in the course of his employment and agency in the express business of the company in Huntington county.

In the case of *Barney* v. *Daniels*, referred to above, this court decided that an action would not lie against the agent and his sureties on their bond in favor of the express company, for moneys received by the agent, while acting as such, for services rendered by the company, the company not having complied with the statute.

In *Daniels* v. *Barney*; *Same* v. *Wells*, 22 Ind. 207, this court said, in treating of the question as to the liability of the agent for the money received, notwithstanding the illegality of the business out of which it grew; " It may be that if this suit had been brought against the agent himself, upon an implied assumpsit to pay over money received to the use of his principal, it would have rested upon a principle free from doubt. But this is not such a suit." And in *Barney* v. *Daniels*, 32 Ind. 19, the court said, " It must be remembered that this is not a suit against the agent for money had and received to the use of the principal; but it is a suit on the bond against the agent and his sureties, to recover money received by the former in the transaction for the principal of illegal acts." These statements sufficiently show that the court did not in those cases intend to decide against the right of the principal to recover against the agent, in such a case, for money had and received.

We doubt very much whether the legislature intended, in the enactment of the statute in question, to produce or sanction any such consequences as that the agent, after having received the money of the principal, and after the transaction between the principal and third persons was completed, should be allowed to repudiate the agency and keep the money, applying it to his own use. The obligation of the agent to account for the money is separate and distinct from the contracts of the company with third persons, which were the subject-matters of the statute. To hold that the agent is not bound to account for the money received by him, is to sanc-

tion an act of the grossest dishonesty and bad faith on the part of the agent, without the accomplishment of any equivalent benefit to any one, or to the public. On account of some unintentional omission in an honest effort to comply with the law, for which the agent is probably as much in fault as the principal, the agent sets his principal at defiance, denies his right to the money, and not refunding it to the parties who paid it to him, is allowed to retain it himself.

But the question in this case is whether the agent is liable, where the action is not on the bond, but is for money had and received. "If money have been actually paid to an agent for the use of his principal, the legality of the transaction, of which it is the fruit, does not affect the right of the principal to recover it out of the agent's hands. For though the law would not have assisted the principal, by enforcing the recovery of it from the party by whom it was paid, because it is the policy of the law not to aid the completion of an illegal contract, yet, when that contract is at an end, the agent, whose liability arises solely from the fact of having received money for another's use, can have no pretence to retain it." Dunlap's Paley's Agency, 62.

Judge STORY, in his work on Agency, sec. 347, says: "If money due to a principal on an illegal transaction should be paid over to his agent for him by the party from whom it is due, it has been held that the principal may recover it from the agent; for the contract of the agent to pay the money to his principal is not immediately connected with the illegal transaction; but it grows out of the receipt of the money for the use of his principal."

We have examined the cases, on the authority of which these eminent authors have thus laid down the rule applicable to the question under consideration, and are satisfied that it is correct. But see *Brooks* v. *Martin*, 2 Wal. 70; *Farmer* v. *Russell*, 1 B. & P. 296; *Murray* v. *Vanderbilt*, 39 Barb. 140.

We think the agent is estopped to dispute the title of his

The Cleveland, Columbus, Cincinnati, and Ind'polis R. W. Co. *v.* Crossley, Ex'r.

principal to the money which he has received for him. A tenant cannot dispute the title of the landlord, under and by virtue of which he obtained possession of the premises. A bailee cannot dispute the title of the bailor from whom he received the thing bailed; especially, he cannot set up title in himself. Why should an agent be allowed to place himself in a position of hostility to his principal and himself claim that which he has received for him? Paley on Agency, p. 10 and note k, and authorities there cited.

We are of the opinion that the second paragraph of the answer contained no sufficient defense to the action.

Judgment reversed, with costs, and the cause remanded.*

*J. R. Coffroth* and *J. R. Slack,* for appellant.

*W. C. Kocher, B. M. Cobb, Ibach & Stults,* and *H. N. Ward,* for appellees.

*Petition for a rehearing overruled.