BILLINGSLEA GRAIN CO. v. HOWELL
et al. (No. 1246.)

(Court of Civil Appeals of Texas. Amarillo.
Feb. 13, 1918. Rehearing Denied
March 20, 1918.)

CORPORATIONS ☞661(6)—FOREIGN CORPORA-
TIONS — RIGHT TO SUE — ACTION AGAINST
AGENT.

Under Vernon's Sayles' Ann. Civ. St. 1914,
art. 1318, as to right of foreign corporations to
sue, such a corporation, doing business without
a permit, cannot sue its agent.

Appeal from District Court, Collingsworth
County; J. A. Nabers, Judge.

Action by the Billingslea Grain Company
against John Howell and others. From judg-
ment for defendants, plaintiff appeals. Af-
firmed.

R. H. Templeton, of Wellington, for appel-
lant. R. H. Cocke, Jr., of Wellington, Counts
& Counts, of Hollis, Okl., and A. M. Mood and
H. G. Hendricks, both of Amarillo, for appel-
lees.

HALL, J. Appellant Grain Company, a
private corporation organized under the laws
of Oklahoma, through W. S. Wisdom, as its
agent, was engaged in buying grain and cot-
ton seed at Dodsonville, Tex., during the sum-
mer and fall of 1916, for shipment. About
the 10th of October of that year Wisdom was
forced to leave and appellee, John Howell,
accepted the agency for appellant Grain Com-
pany at Dodsonville, and represented said
company in the purchase of cotton seed and
grain until about November 2d, when he, ac-
cording to his statement, ceased to buy for
appellant Grain Company and entered into
an agreement with interveners, Hendricks &
Scruggs, a firm of Hollis, Okl., whereby they
should furnish the funds for his use in mak-
ing purchases, and that the profits and losses
should be shared equally between said firm
and Howell. It appears, however, that Bil-
lingslea Grain Company was not notified of
this arrangement, and of the fact that Howell
had ceased to act as their agent, until No-
vember 6th, whereupon it filed this suit in
Collingsworth county, Tex., and had a writ
of sequestration issued and levied upon the
grain and cotton seed then in Howell's hands
at Dodsonville.

Howell filed an original answer, consisting
of a general denial and of a special answer,
alleging that he was the agent of Hendricks
& Scruggs, a partnership, and that the 'prop-
erty seized by the writ was not the property
of appellants, nor of the said Howell, but
was in truth and in fact the property of said
Hendricks & Scruggs; that it was paid for
out of the funds of said Hendricks & Scruggs,
under an agreement between defendant and
said Hendricks & Scruggs that defendant
should be paid a commission on all grain and
cotton seed so purchased. He prayed that
Hendricks & Scruggs be made parties defend-

ant, and alleged that at the instance and re-
quest of Hendricks & Scruggs he had replev-
ied the property levied upon.

Hendricks & Scruggs filed an original an-
swer, adopting the answer of John Howell,
and praying for judgment in their favor. On
the same day Hendricks & Scruggs filed a
plea in abatement, alleging that appellant
Grain Company was a foreign corporation;
that it had not complied with the laws of the
state of Texas, and obtained a permit to do
business in the state, and was therefore not
entitled to maintain the suit. This plea was
tried, together with the other issues, and the
cause submitted to a jury upon special issues,
many of them immaterial and not necessary
to be considered in disposing of this appeal.

The substance of the material issues found
by the jury is: That Howell, on the 6th day
of November, 1916, informed appellant that
he would not let them have the grain; that
appellant offered to pay Howell the price paid
for the corn, maize, and cotton seed, and his
commission; that all grain and cotton seed
purchased prior to November 2, 1916, was
bought for appellant company, but that such
purchases were not intended by Howell to be
made for appellant company between Novem-
ber 2d and November 6th; that Howell ac-
cepted employment of appellant and agreed to
act as his agent for the purchase of grain
and cotton seed after W. S. Wisdom ceased
to act, about October 10, 1916, but did not
give appellant notice that he would not rep-
resent them as agent until November 6th;
that appellant did not agree to release Howell
from his contract of agency. In reply to a
number of questions the jury found that ap-
pellant was a foreign corporation, that it was
transacting business in Texas without a per-
mit, and that only part of the grain purchas-
ed and sold by said company was on inter-
state shipments. The judgment is evidently
based upon the findings of the jury upon this
issue, and decrees that the suit be dismissed.

The proposition is urged by the second as-
signment of error that the court should not
have dismissed the action, since it appears
that, although plaintiff was a foreign corpora-
tion, and doing business in this state with-
out a permit, it further appears that John
Howell, as agent for the corporation, had
purchased property and was holding it as
such agent, and that therefore a failure to
comply with Vernon's Sayles' Ann. Civ. St.
1914, art. 1314, did not apply to such a suit. In
the original opinion we reversed the judgment
of the lower court, basing our conclusion upon
the Tennessee case, Memphis & Arkansas City
Packet Co. v. Agnew, 177 S. W. 949, L. R. A.
1916A, 640, and the authorities cited in, the an-
notation found in L. R. A. 1916A, 646. As there
stated, the weight of authority upon the gen-
eral question of the right of a foreign cor-
poration to maintain an action in a jurisdic-
tion where it has not complied with the state

ute requiring it to obtain a permit is with the holding in the Agnew Case, to the effect that such statutes do not generally apply to suits between a foreign corporation and its agents and officers. A review of the matter, however, in the light of the motion for rehearing, and an able and exhaustive oral argument upon it, has convinced us that the judgment should be affirmed. Vernon's Sayles' Civil Statutes, art. 1318, relating to the right of foreign corporations to maintain a suit in this state, is:

"No such corporation can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort, unless at the time such contract was made, or tort committed, the corporation had filed its articles of incorporation under the provisions of this chapter, in the office of the secretary of state for the purpose of procuring its permit."

The Minnesota statute in almost the same language was construed by the Supreme Court of that state in Thomas Mfg. Co. v. Knapp, 101 Minn. 432, 112 N. W. 989, and the reasoning of the court in that case we think is decisive of the proposition urged by the second assignment above. Elliott, Justice, speaking for the court, said:

"This court has consistently adhered to the rule that there can be no recovery upon a contract entered into in direct violation of the law. * * * Foreign corporations are denied the right to resort to the courts for the purpose of enforcing any claim arising out of business which they are forbidden to transact within the state without having first complied with the requirements of the statute. The terms of the statute are in no wise burdensome. In order to secure compliance therewith, the Legislature has imposed a penalty upon the corporation, and in addition thereto has withdrawn the privilege previously enjoyed through comity of maintaining action in the courts of the state. It is expressly provided that 'no corporation which shall fail to comply with the provisions of this Act can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort.' No limitations are expressed, and no exceptions can be implied. The corporation must comply with the law, or the courts of the state are closed to it. The statute expresses a clearly defined public policy, and it is inconceivable that in the face of this prohibition a foreign corporation may, without complying with the statute, establish an agency within the state, proceed to transact business in violation of the statute, and, when its agent neglects to account for money received in the course of such business, bring an action in the state court against the agent and be heard to assert that the agent cannot raise the question of the right of the corporation to maintain the action. This would be to make the public policy of the state subsidiary to the propriety and policy of a rule of private law which forbids an agent to question the right of his principal to money collected by him for the principal. Such a rule entirely ignores the broad and controlling rights of the public. In the present case, for instance, the question is not whether Knapp is under a moral and legal obligation to pay this note or to account for money which he has received as the agent of the appellant. Knapp's rights and obligations are matters of secondary importance in the face of the statute, which declares that the corporation cannot maintain any action upon any demand, whether arising out of contract or tort. As far as the right to raise this question is concerned, it is immaterial whether the action is upon a promissory note, or to recover money received by an agent for the use of his principal. The doctrine of estoppel cannot be applied to enable a person or corporation to do what is forbidden by law."

It occurs to us, upon a reconsideration that under the broad and comprehensive language of our statute the language above quoted is decisive of this controversy. A review of the cases cited in the note to the Agnew Case, supra, shows that the statutes which were under consideration are not as broad as the statute of this state and of Minnesota. Nearly all of the cases holding that such statutory provisions are not applicable to suits between the corporation and its agent quote with approval from U. S. Express Co. v. Lucas, 36 Ind. 361, and this case is referred to by Judge Elliott, in the following language:

"It was held that, while a foreign corporation which had not complied with the statute could not recover on a bond given by an agent for the proper discharge of his duty, it could maintain an action against the agent for money had and received in the course of the agency for the use of the corporation. It was said that the agent was estopped to dispute the title of his principal to the money. The court asks: 'Why should an agent be allowed to place himself in a position of hostility to his principal and himself claim that which he has received for him?' This seems to be wide of the mark. The question is not what the agent, as between himself and his principal, should be permitted to do, but what the delinquent corporation is permitted to do by the laws of the state?"

The original opinion is withdrawn, and the judgment is affirmed.

HUFF, C. J., not sitting, being absent in Austin with committee of judges passing on applications for writs of error.