514 P.2d 277

Ronald H. SCHULTZ and Roseann Schultz, husband and wife, Appellants,

v.

George A. HINSHAW and Richard W. Gibson, Individually and as Officers and Directors of Captain Orange of Arizona, Inc., a corporation; and Captain Orange of Arizona, Inc., a corporation, Appellees.

No. 2 CA–CIV 1385.

Court of Appeals of Arizona, Division 2.

Sept. 27, 1973.

Rehearing Denied Oct. 31, 1973.

Review Denied Dec. 4, 1973.

relief, asking that the court determine the relationship of the parties. Plaintiffs asked for damages and an accounting. The court found that Captain Orange was owned by the appellee Captain Orange of Arizona, Inc., a Colorado corporation, and that the appellant and individual appellees were directors of this corporation. The court then directed that a master be appointed and that an accounting be made of the business activities of Captain Orange in Arizona.

This interlocutory order, by express statutory provision, is appealable. A.R.S. § 12–2101, subsec. G; Bulova Watch Company v. Super Department Stores of Arizona, 4 Ariz.App. 553, 422 P.2d 184 (1967).

Two key questions are involved in this appeal. Does the evidence support the finding of the trial court? Are appellees without a remedy by the failure of Captain Orange of Arizona, Inc. to qualify to do business in this State as a foreign corporation?

The evidence in this case is overwhelming in favor of the finding of the trial court. Not only did appellant Ronald Schultz sign the Articles of Incorporation which were subsequently filed in the State of Colorado as an incorporator, but other documentary evidence in the case thoroughly and effectively impeached his testimony that the relationship between him and individual appellees was that of debtor and creditor.

A.R.S. § 10–482 provides:

"No foreign corporation shall transact business in this state until it has complied with the requirements of § 10–481, and every act done prior thereto is void."

Captain Orange opened its doors for business in the El Con Shopping Center in January of 1971. At that time no corporation had yet been formed. It was not until January of 1971 that appellant signed the Articles of Incorporation in Arizona and returned them to Colorado for filing in that state. On February 5, 1971, a certificate of incorporation was issued by the State of Colorado. In May of 1971, appel-

Laber, Lovallo & Colarich, Ltd., by Paul W. Colarich, Jr., and Sidney F. Wolitzky, Tucson, for appellants.

Paul G. Rees, Jr., Tucson, for appellees.

## OPINION

HOWARD, Judge.

This case involves a business known as "Captain Orange" operating in the El Con Shopping Center, Tucson, Arizona.

Appellees, the plaintiffs below, filed a suit in superior court in three counts. Counts I and II of the complaint alleged breach of contract and breach of fiduciary duties respectively on the part of the appellants. Count III was for declaratory

lees first became aware that appellant Ronald Schultz was maintaining that the business he was running in Tucson was his own business and that the sums of money contributed by appellees Hinshaw and Gibson for the construction and opening of the business were personal loans to Schultz.

█ Appellants maintain that when Ronald Schultz signed the Articles of Incorporation in this State appellee corporation was not qualified to do business in Arizona. Ergo, any legal relationship flowing from his signature cannot be enforced because of the provisions of A.R.S. § 10–482. This contention is without merit. When Schultz signed the Articles of Incorporation there was no corporation in existence at that time which could qualify to do business in Arizona. Colorado Revised Statutes 1963, 31–3–10 provides that corporate existence begins upon the issuance of the certificate of incorporation. It further provides that the certificate is conclusive evidence that all conditions precedent have been complied with and that the corporation has been incorporated under the Colorado Code. A.R.S. § 10–482 simply is not applicable to this situation.

█ There remains a question as to Schultz' responsibility for any profits made by the corporation and any assets acquired by the corporation after the Colorado certificate of incorporation was issued. There is no doubt that at that time Captain Orange was doing business in Arizona in violation of the applicable Arizona statutes. Is the appellee corporation barred from requiring Schultz to account for the profits and assets of the corporation during this period of time and pay over same to the corporation by virtue of A.R.S. § 10–482?

There appear to be two lines of authority on this subject. The view that the principal cannot recover against the agent is best illustrated by the case of Thomas Manufacturing Company v. Knapp, 101 Minn. 432, 112 N.W. 989 (1970). In this case the Minnesota statute provided that a non-complying foreign corporation could not maintain any suit or action, legal or equitable in any of the courts of the state upon any demand whether arising out of contract or tort. In denying relief to the corporation the court stated that it was in no way burdensome to require the corporation to comply with the statute; that the statute expressed the clear public policy of the state and that since no limitations were expressed in the statute no exceptions would be implied. Its rationale was followed in the State of Texas in the case of Billingslea Grain Company v. Howell, 205 S.W. 671 (Tex.Civ.App.1918).

The contrary view is exemplified by the case of Memphis and Arkansas City Packet Company v. Agnew, 132 Tenn. 265, 177 S.W. 949 (1915), which has been referred to as the majority view. Fletcher Cyclopedia Corporations, Vol. 17, Sec. 8582. See also, Annot. L.R.A.1916A, 646. Under this view one who acts as an agent of a foreign corporation in doing business in the state without having complied with conditions precedent prescribed by statute is estopped, as against the corporation, to set up failure to comply with the statute in order to defeat an action by the corporation to recover money received by the agent in the course of his employment or for an accounting. The basis for the majority view is that although courts will not enforce an illegal contract, if a servant or agent has, in the prosecution of an illegal enterprise for his master or principal, received money or property belonging to the master or principal, he is bound to turn it over to him, and cannot shield himself from liability upon the ground of the illegality of the original transaction. Fletcher Cyclopedia Corporations, Vol. 17, Sec. 8532; 3 Am.Jur.2d Agency § 216; Stephenson v. Golden, 279 Mich. 710, 276 N.W. 849 (1937). The rationale behind such rule is best expressed in Baldwin v. Potter, 46 Vt. 402 where the court states:

"In other words, because my principal did not receive the money on a legal contract, I am at liberty to steal the

money, appropriate it to my own use, and set my principal at defiance. We think the law is well-settled and otherwise.

If a servant or agent of another has, in the prosecution of an illegal enterprise for his master, received money or other property belonging to the master, he is bound to turn it over to him, and he cannot shield himself from liability therefor, upon the ground of the illegality of the original transaction."

In examining the entire fabric of our statutory requirements relating to foreign corporations, it is evident that they were enacted for the protection of the citizens of the State of Arizona. The doing business statutes and the information obtained by the State on compliance therewith, are conventional means of assuring responsibility and fair dealing on the part of foreign corporations coming into the state. Worcester Felt Pad Corporation v. Tucson Airport Authority, 233 F.2d 44, 49 (9th Cir. 1956). When the illegality of the principal's conduct merely consists of failing to qualify to do business within the state, and particularly, where, as in the State of Arizona, there are no criminal sanctions non-compliance with the statutes prior to doing business, we believe that a rule allowing the agent to set up as a defense the failure to qualify to do business would put a premium on knavery, fraud, and chicanery. We do not believe the purpose of the qualification statutes would be subverted by holding that A.R.S. § 10–482 does not apply when the action is by the non-qualifying corporation against a fiduciary and do therefore so hold.

Appellants also claim that appellees are estopped from obtaining an accounting or profits because appellee George A. Hinshaw, a lawyer in the State of Colorado, acted as appellant's attorney. Neither the evidence adduced at trial nor the cases cited as authority support appellants' position.

Affirmed.

HATHAWAY, C. J., and KRUCKER, J., concur.

On Motion for Rehearing

It is ordered that the Motion for Rehearing be, and the same hereby is, denied, and it is

Further ordered that the Order of the Pima County Superior Court entered in Pima County Superior Court cause No. 130151 on October 22, 1973, in regard to an accounting be, and the same hereby is, stayed, until further order of the court.