**TITLE INSURANCE COMPANY OF MINNESOTA, a Minnesota corporation, Plaintiff–Appellant,**

v.

**AMERICAN SAVINGS AND LOAN ASSOCIATION, a California corporation, individually and as successor in interest to State Savings & Loan Association, a California corporation, Defendant–Appellee.**

No. 87–1493.

United States Court of Appeals, Tenth Circuit.

Jan. 31, 1989.

Deborah A. Sperlak (Edward B. Towey and J. Scott Needham with her, on the brief) of Loser, Davies, Magoon & Fitzgerald, Denver, Colo., for plaintiff-appellant.

Roger P. Thomasch (Mark Wielga with him, on the brief) of Ballard, Spahr, Andrews & Ingersoll, Denver, Colo., for defendant-appellee.

Before LOGAN, LEAVY,* and BRORBY, Circuit Judges.

PER CURIAM.

Title Insurance Company of Minnesota (Title) commenced this declaratory judgment action, with jurisdiction based on diversity of citizenship, seeking a bench ruling that certain title insurance policies it issued did not require it to defend or in-

* The Honorable Edward Leavy, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

demnify American Savings and Loan Association (American) in American's capacity as a third-party defendant in a state court action. The district court held that, as a matter of law, Title had a duty to defend under the policies. 655 F.Supp. 450.

The facts of this case are not in dispute. American's predecessor in interest, State Savings & Loan Association (State Savings) made loans on certain condominium units in Colorado secured by a deed of trust on each unit. These deeds of trust were insured by utilizing standard form title insurance policies purchased from Title. American, as the successor in interest to State Savings, eventually foreclosed on the properties and then assigned its interest to a subsidiary which brought suit against the borrowers in a Colorado state court to recover deficiency judgments. Some of the borrowers filed a third-party complaint against American alleging that, among other things, the loans were illegal and void under Colo.Rev.Stat. § 11–43–101 (Repl. Vol.1987). American, relying on the terms of the title insurance policies, made demand on Title to defend and indemnify. Title denied coverage and then commenced this action.

In the district court, Title moved for summary judgment relying on paragraph 4 of the "exclusions from coverage" provision of the policies which states as follows:

The following matters are expressly excluded from coverage of this policy: ... 4. Unenforceability of the lien of the insured mortgage because of failure of the insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

Title argued that § 11–43–101 is a "doing business" law within the meaning of the exclusion and American's alleged violation of that statute warranted no coverage. American filed a cross motion for summary judgment challenging the constitutionality of the statute.

Colo.Rev.Stat. § 11–43–101 states, in full:

Any foreign savings and loan association which conducts a savings and loan business as defined in section 11–40–103 shall not sell its shares or accounts or make new loans in this state. Violation of this section shall subject the offender and its officers, agents, and representatives, upon conviction thereof, to a fine of not more than five hundred dollars, or to imprisonment in the county jail for not more than six months, or to both such fine and imprisonment, and each separate business transaction in violation of this section shall constitute a separate offense; but nothing in this section shall be construed to prohibit a foreign association from transacting business in respect to executory contracts in force on May 17, 1939.

The district court declined to consider the constitutionality of § 11–43–101 and denied Title's motion for summary judgment, holding that the statute is not a "doing business" law within the meaning of the exclusion but rather a criminal statute. Therefore, the exclusion did not apply and Title was obligated to defend American in the state court action.

On appeal the parties concede that Colorado law governs the interpretation of the title insurance policies. Under Colorado law the words used in an insurance contract should be interpreted according to their ordinary and obvious meaning absent a showing of ambiguity. *United Bank of Pueblo v. Hartford Accident & Indemnity Co.*, 529 F.2d 490, 493 (10th Cir.1976). Clauses in insurance contracts which limit coverage must be in clear and unequivocal language. *State Compensation Ins. Fund v. Wangerin*, 736 P.2d 1246, 1248 (Colo.App.1986).

There are no reported decisions from Colorado that have expressly referred to any Colorado statutes as the "doing business laws" of the state. However, similar words have been used by courts in other jurisdictions to describe state statutes that regulate corporations by prescribing the terms and conditions upon which corporations will be permitted to do business in the state. *See Foxco Indus., Ltd. v. Fabric*

*World, Inc.*, 595 F.2d 976 (5th Cir.1979) (discussing Alabama's "doing business statutes"); *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849 (App.D.C.1981) (discussing the District of Columbia's "doing business statute"); *Schultz v. Hinshaw*, 20 Ariz.App. 524, 514 P.2d 277 (1973) (discussing Arizona's "doing business statutes"). It is significant that § 11–43–101, in an earlier formulation, was characteristic of a classic "doing business" law because it required foreign savings and loan associations to obtain a certificate of authority before conducting business in Colorado. *See* Colo.Stat.Ann. ch. 25 § 35 (1935).

Does § 11–43–101's transformation from a statute which placed conditions upon foreign savings and loan associations seeking to conduct business in Colorado to a statute which imposed criminal penalties against foreign savings and loan associations that originate loans in Colorado render it not a "doing business" law? We think not. Section 11–43–101 still regulates foreign savings and loan associations. Merely because the statute now regulates by prohibitions rather than by conditions does not make it distinguishable from a representational "doing business" law. Likewise, § 11–43–101's imposition of criminal sanctions is not atypical of a "doing business" law. *See e.g.*, Mass.Gen.Laws Ann. ch. 181, § 13 (West 1987).

In its brief on appeal, American has argued as an alternative ground for affirmance that even if § 11–43–101 is a "doing business" law within the meaning of the exclusion provision, the exclusion is still not triggered because § 11–43–101 does not render liens unenforceable and the exclusion only excludes coverage due to the *"[u]nenforceability* of the lien" arising from the failure to comply with "doing business" laws. This argument is ultimately self defeating because the premise relied on by American to avoid application of the exclusion, *i.e.*, that § 11–43–101 does not void liens, necessarily admits there is no injury or harm for which the policies provide coverage.

Accordingly, the judgment of the United States District Court for the District of Colorado is REVERSED.