MOUNT VERNON BANK, Appellant, v. JOHN D. PORTER *et al.*, Respondents.

St. Louis Court of Appeals, March 10, 1896.

Motion for New Trial: AMENDMENT AFTER EXPIRATION OF TIME ALLOWED FOR FILING. *Held*, BIGGS, J., *dissenting*, that a motion for new trial may be amended by the insertion of an additional ground therein during the term at which it was filed, though after the expiration of the four days allowed for the filing of it; but, to warrant such amendment, the failure to insert such additional ground in the motion when it was filed must be properly accounted for.

*Appeal from the Lawrence Circuit Court.*—HON. W. M. ROBINSON, Judge.

REVERSED AND REMANDED AND CERTIFIED TO THE SUPREME COURT.

*H. Brumback, N. Gibbs,* and *Samp. Jennings* for appellant.

*W. B. Skinner* and *Mann & Talbutt* for respondents.

BIGGS, J.—In 1888, the defendant Porter was the cashier of the plaintiff bank. This action is on his official bond, in which he is charged with converting commissions belonging to the bank and arising out of the negotiation and sale of certain bonds issued by the

Peirce City Water Company. The allegation is that *Porter*, while acting for plaintiff and in the line of his employment as cashier, "did negotiate and sell for Jerry Guinney and for Peirce City Water Company fifty bonds of the face value of $25,000, and for commissions and compensation for such services did collect, retain and receive, from said Jerry Guinney and the Peirce City Water Company and William C. Little Bond Company a thousand dollars, and retained and appropriated the whole thereof," etc. The answer of Porter is a general denial. The surety defendants answered separately, and averred that the sale or negotiation of bonds by the plaintiff was outside of its corporate powers, and that, if Porter received and converted the commissions as claimed, they as his bondsmen were not liable therefor. At the close of the plaintiff's evidence the court, at the instance of the defendants, gave an instruction in the nature of a demurrer to the evidence, whereupon the plaintiff submitted to a nonsuit, and, having unsuccessfully moved to set the nonsuit aside, it has brought the case here for review.

We have carefully examined the entire evidence offered by the plaintiff, including that received and excluded, and we have been unable to glean from it any substantial proof of the alleged cause of action. The bonds were sold by the Peirce City Water Company to the W. C. Little Bond Company, which in turn sold them to the Washington Bank. Porter, as plaintiff's cashier, acted for the water company in the sale of the bonds and was largely instrumental in bringing about the sale; but we find no substantial or tangible evidence that he received anything for his services. The plaintiff called as a witness the president of the water company, who had the exclusive management of its business, and who represented his company in all

matters pertaining to the sale of the bonds. He testified that his company received $22,700 for the bonds, which included some accrued interest, and that Porter was paid nothing for his services. He also testified that the W. C. Little Bond Company was to pay the cost of lithographing the bonds and any other expenses incurred, amounting in the aggregate to about $150. The plaintiff also read in evidence the deposition of W. C. Little, the president of the W. C. Little Bond Company, who testified that he gave $22,500 for the bonds, and that he turned them over to the Washington Bank for $23,000. He also testified that he paid Porter nothing for his services. Thus the positive testimony of the plaintiff's own witnesses refutes the charge that Porter received money on account of the sale of the bonds.

The plaintiff concedes this, but its counsel rely upon some independent facts, which they insist furnish some evidence in support of the alleged cause of action. For instance, it is in evidence that sometime in the year 1888—the exact date is not shown—Porter drew on the W. C. Little Bond Company for $250 through the Cedar County Bank; that the amount was collected and passed to Porter's credit, and was subsequently checked out by him. This is all that the record shows of the transaction, except that all of the checks drawn by Porter against the deposit were sent to corresponding bankers to be collected on plaintiff's account. The plaintiff made no effort to trace the matter, and its counsel refrained from interrogating Mr. Little concerning it, who could doubtless have furnished a full explanation.

There is another transaction, which counsel claim is significant and entitled to consideration. On November 13, 1888, Porter drew a check on W. C. Little for $155.50, and inclosed it to him in a letter with instruc-

tions to place the amount to plaintiff's credit with the Laclede Bank in St. Louis. The books of the plaintiff show that on the same day Porter deposited to his individual credit the sum of $155.50 *in gold*. No effort was made to show that the plaintiff did not receive the credit with the Laclede Bank or that the entry of the deposit was false, and its counsel also failed to ask Mr. Little concerning the matter. It seems that the plaintiff preferred to leave both of these transactions in doubt, rather than call for an explanation from the man who doubtless knew all about them. Under this record, the conclusion that the two transactions with Little represented commissions paid Porter on account of the sale of the bonds in question must rest on mere conjecture, and the further facts (which plaintiff's evidence discloses) that the plaintiff bought and sold other bonds, and that Porter received from Little other moneys which were confessedly paid on other accounts, render the claim the more improbable.

Within four days after the trial the plaintiff filed its motion for new trial, assigning as reasons the exclusion of proper testimony offered, and the giving of the instruction taking the case from the jury. After the lapse of four days, but during the term and prior to the hearing of the motion for new trial, the plaintiff asked leave to amend its motion for new trial by adding thereto the additional ground of newly discovered evidence. This motion was accompanied with the following affidavits:

1. Affidavit of L. A. Sater to the effect that, in the spring of 1890, the defendant Porter detailed to affiant the particulars and profits realized by him (Porter) in the Peirce City Waterworks Bond transaction, and that he then stated to affiant that he had realized a profit and clear income of $400.

2.    The affidavit of S. D. Gray to the effect that, in the year 1893, he had a conversation with the defendant Porter, in which the latter detailed to him the particulars and profits realized by him (Porter) in the matter of the sale of the Peirce City Waterworks bonds, and that he then stated to affiant that he realized a clear profit of $400 from the sale of said bonds. Affiant further stated that he never communicated this information to anyone until after the trial of the cause.

3.    The affidavit of James T. Potter, Parker Potter and W. E. Wright, directors and president of the plaintiff bank, to the effect that they had no knowledge, until after the trial of the cause, that affiants Sater and Gray were in possession of the above information; and that they had no knowledge that any witness could give this testimony or similar testimony, and that this testimony could be produced at the next trial.

The court refused permission to the plaintiff to amend its motion for new trial, and refused to consider the amendment or to consider the affidavits filed in its support.

That a motion for new trial must be filed within four days after trial, to be entitled to consideration, has been often decided by the courts of this state. It has also been decided in two cases, at least, that such a motion can not be helped out by a supplemental motion filed thereafter. *State v. Brooks*, 92 Mo. 542, and *State v. Dusenberry*, 112 Mo. 277. It must be remem-bered, however, that in both of these cases the motion was sought to be amended by inserting therein matters which occurred prior to and at the trial of the cause, and it nowhere appeared that these new facts might not have been as fully stated in the original motion filed. The right to file a motion for new trial, and the power of the court to entertain the same, are not stat-

utory rights. The statute simply restrains rights which were always recognized at common law. The restriction of time to four days was inserted to secure the speedy entry of a final judgment. The code provides that the court may at any time before final judgment, in furtherance of justice, amend any pleading or other proceeding by inserting therein other allegations material to the case, and further provides that the courts shall so construe the law relating to amendments as to distinguish between form and substance.

In view of the foregoing we must hold that the court erred in not permitting the amendment, and in not considering the affidavits filed in support thereof. All the requirements touching a motion based upon newly discovered evidence had been complied with. It was shown that the evidence was new, that it was material, that it was not cumulative, and that it could not have been procured for use at the trial as it was unknown at the date of trial to the party filing the motion. While the evidence adduced at the trial raised a bare suspicion, this new evidence has a tendency to convert that suspicion into a tangible fact. It was shown at the trial that Little wrote to defendant Porter: "If you get the bonds, we are to have an equal interest in the profits." It was also shown that Porter drew a check on Little for $155.50, that Little placed this amount to the credit of the plaintiff bank at the Laclede Bank in St. Louis, that the Laclede Bank remitted it to the plaintiff bank, and that the defendant Porter deposited this exact amount about that time to his individual credit. This amount added to the further amount of $250, drawn by Porter through the Cedar County Bank on Little, also in 1888, makes up within a few dollars the $400 spoken of by the witnesses as admitted by Porter to them to have been his profits in the negotiation of the bonds.

The new testimony, therefore, was of a character, which, if uncontradicted, would, not only with probability, but almost with certainty, change the result. Nor can we hold that the plaintiff was guilty of any laches in failing to insert in its motion for new trial within four days a ground of the existence of which it was unaware until afterward. Why should a person be sent to seek his relief in equity on the ground of accident, when he calls the attention of the trial court during the trial term, and while that court has full power over its records, to the accident complained of, and while the power of the trial court to vacate its judgment is wholly unquestioned?

The foregoing discussion as to the right of the plaintiff to amend its motion one hundred days after the trial by adding another ground is inserted at the request of my associates as an expression of their views. In this I can not concur. The statute expressly requires, and it is mandatory, that motions for new trial must be filed within four days after the trial. It is in my opinion a palpable evasion of the statute to allow such a motion to be amended after the expiration of the time by inserting new and additional grounds, and I understand the supreme court so to hold in the case of *State v. Brooks*, 92 Mo. *loc. cit.* 591, and also in that of *State v. Dusenberry*, 112 Mo. *loc. cit.* 295. But, aside from this, I am of the opinion that the circuit court would have been justified in refusing to grant a new trial had the amendment been allowed, and hence the plaintiff was not prejudiced. As the case will go to the supreme court, it will not be necessary for me to justify this statement, or to show some mistakes of fact which my associates have made by a particular reference to the evidence. Suffice it to say that, when the statements of Sater and Gray are read in the light of the testimony of Little and

Guinney, the improbability of their accuracy becomes apparent. Porter could not have received from the Little Bond Company $400 for the negotiation of the bonds of the Peirce City Water Company, for, according to all of the testimony, the bond company did not receive over $300 commissions, and it certainly did not pay Porter a sum exceeding that amount. Guinney testified that he paid Porter nothing, and there is no pretense that he received anything from the Washington Bank; hence, if Porter had any conversation with Sater and Gray about commissions on a bond deal, he evidently referred to some other bond transaction of which there is some evidence.

Under the ruling of a majority of the court the judgment of the circuit court must be reversed and the cause remanded with directions to sustain the motion for new trial, and it is so ordered; but, as I am of the opinion that the ruling of my associates is opposed to that of the supreme court in the cases above cited, it is ordered by the court that the case be certified to the supreme court for final determination.