MEMPHIS & ARKANSAS RIVER PACKET CO. *v.* AGNEW.

(*Jackson.*    April Term, 1915.)

1. **CORPORATIONS.** Powers of foreign corporations. Actions. Accounting.

That a corporation has failed to comply with the law requiring every foreign corporation to file a certified copy of its charter with the secretary of State, and is therefore doing business in violation of law, does not prevent it from requiring its officers and employees to account for secret profits made with the company's money and credit. (*Post, p.* 270.)

Cases cited and approved:   Penn. Mutual, etc., Co. v. Bradley, 21 N. Y. Supp., 876; U. S. Express Co. v. Lucas, 36 Ind., 361; Walker v. Kremer, 29 Fed. Cas., No. 17,076; De Lavol Separator Co. v. Walworth, 13 Brit. Columbia, 295; Holleman v. Bradley Fertilizer Co., 106 Ga., 156; Moss Mercantile Co. v. First Nat. Bank, 47 Or., 361; Bendet v. Ellis, 120 Tenn., 277; Brooks v. Martin, 2 Wall., 70; Pointer v. Smith, 54 Tenn., 737.

Cases cited and distinguished:   Thomas Mfg. Co. v. Knapp, 101 Minn., 432; Benefit Society v. Lesser, 105 Mich., 716; State v. O'Brien, 94 Tenn., 79; Insurance Co. v. Kennedy, 96 Tenn., 711.

2. **CORPORATIONS.** Ultra vires acts. Accounting.

The captain of a steamboat dealt in cotton seed and other commodities on commission without the knowledge of his employers, who subsequently brought an action for an accounting for secret profits. *Held* that, although the transactions upon which the action was based were *ultra vires* the corporation, they were not *malum in se,* and profits made thereby with the aid of the company's name and the use of its employees were recoverable. (*Post, p.* 272.)

Cases cited and approved:   Latta v. Kilbourn, 150 U. S., 524; Aas v. Benham, 2 Ch. D., 244; Kellogg, etc., Co. v. Webster Mfg. Co., 140 Wis., 341; Case v. Kelly, 133 U. S., 21; Scott v. Farmer's,

etc., Bank, 97 Tex., 31; U. S. Express Co. v. Lucas, 136 Ind., 361; Fisk v. Patton, 7 Utah, 409; Hertzler v. Geigley, 196 Pa., 419; Carson City Sav. Bank v. Carson, etc., Co., 90 Mich., 550.

Cases cited and distinguished:   Goodhue, etc., Co. v. Davis, 81 Minn., 210; Mt. Vernon Bank v. Porter, 52 Mo. App., 248; Nordenfelt v. Maxim, etc., Co., A. C., 535.

FROM SHELBY.

Appeal from the Chancery Court of Shelby County. —F. H. HEISKELL, Chancellor.

McKELLAR & KYSER and GILMER P. SMITH, for appellant.

CARUTHERS EWING, for appellee.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

The bill of complaint was filed by the packet company, a body corporate under the laws of the State of Arkansas, against Agnew, the captain of its steamboat, the Kate Adams, plying between Memphis and Arkansas City, who was also the secretary, superintendent, and director of the company, to recover sums alleged to have been made by defendant during his period of service by way of commissions on purchases of cotton seed at various landings made by that boat, using in the transactions the money and credit of complainant company, and handling and weighing the seed by using the employees of the company.

It was further alleged that from 1905 to the date of his discharge the defendant had received from the Tennessee Cotton Oil Company fifty cents per ton commission on such cotton seed delivered by the boat to the oil company, all without the knowledge of the packet company; that the accounts of such commissions were carried upon the books of the oil company in the name of the steamer, Kate Adams; and that payments were made to himself by defendant in the name of the steamer.

It was also alleged in the bill of complaint that cotton seed sacks had been purchased by defendant Agnew with complainant company's money, then transported to planters along the banks of the Mississippi river, handled by the boat's employees, and sold at a profit to the customers of the boat, billed out and collected in the name of the complainant; the profits being appropriated by defendant.

Also, that profits had been made in the purchase and sale of cotton seed in like manner.

The defendant answered, proof was taken, and the cause was referred to the master to state an account under a decretal order of the chancellor to the effect that defendant should be charged with all moneys paid out by him to himself not for the benefit of complainant company and in breach of his duty. The master reported: (1) That complainant had received as commission on cotton seed, $11,308.40; (2) that he had received as profits on the purchases and sales of sacks, $3,458.05; (3) that he had drawn as profits on the pur-

chase and sale of cotton seed, $8,344.43; and (4) that miscellaneous items, properly, chargeable to defendant, amounted to $506.75. The total so reported to be due to complainant, therefore, was $23,617.63.

The chancellor adopted this report and decreed the defendant to be liable accordingly. The defendant appealed to this court and has assigned errors.

The proof shows the defendant to have occupied the trust relations to complainant company above indicated, and that he had the confidence of the other officials to the extent that his books were never audited until his infidelity was discovered shortly before his discharge. He had full charge of the company's record and books, and signed all checks on the bank account of the company in disbursement of its funds, including those payable to himself for commissions on cotton seed, etc.

In reference to the commission on seed derived from the oil company, the proof shows that this was paid for the influence and facility the boat had in the accumulation of a supply. The oil company understood itself to be paying the commission to the Kate Adams; it did not concern that company whether Agnew was captain in charge of the boat or another; and, had it been known to that company's officials that Agnew was secretly profiting, the commission deal would not have been made; its existence was not disclosed to the complainant company, though most of the commission sums were paid by the oil company to the account of the boat and then diverted by defendant.

The allegations of the bill of complaint in respect to the cotton seed bags were sustained by the proof.

Touching the profits on independent or direct purchases and sales of cotton seed, the facts appear to be:

That these were conducted with the funds of and by use of the facilities of the boat.

Beginning with the organization of this company prior to defendant's connection with the company, and for a period of many years, the present steamer Kate Adams, for the purpose of increasing its cargo and correspondingly its revenue and for the purpose of accommodating its patrons, had from time to time, through its officers, captains, and clerks, in a limited way bought cotton seed and other products on the banks of the Mississippi river under a custom that had existed for many years, the profits on which had gone to the complainant company.

Whenever, for example, the boat, in order to get seed, had to make an out of the way landing and one more expensive than a regular landing, something less than the market price was paid for the seed, and this difference was added to the freight rate from that landing, on account of the increased expense of making the landing.

When defendant Agnew began to operate in seed for a secret profit on sales, the funds and credit of the steamer were used; and the actual purchases were conducted for the most part by the clerk of the boat and

his subordinates, all of whom were the employees of and paid by complainant.

The miscellaneous items are termed by complainant, and properly so on the record, as "petty graft," respecting which no defense is seriously urged.

The defenses relied on in the assignment of errors are:

(1)   That the complainant company as an Arkansas corporation had not complied with the law which requires every foreign corporation to file a certified copy of its charter with the secretary of State; and, since it was doing business in violation of law, it could not call defendant to account.

(2)   That the matters and things made the basis of complainant's suit were *ultra vires* acts, and hence not to be made the basis of a right, and the court erred in failing to hold, on the issue as to whether defendant was, in the various transactions mentioned, acting for complainant, that defendant was not so acting.   When a party may be acting in two capacities, in one of which his conduct would be unlawful and against public policy, or, in the other, when his conduct would be legal and proper, the court should adopt that view of his conduct consistent with law.

Going to a consideration of the first of these defenses:   There appear to be cases holding to this view and denying a noncomplying foreign corporation the right to recover on a note of its agent executed for money received under the contract of agency, on the ground that:

It "would be to make the public policy of the State subsidiary to the propriety and policy of the rule of private law which forbids an agent to question the right of his principal to money collected by him for the principal. Such a rule ignores the broad and controlling rights of the public." *Thomas Mfg. Co.* v. *Knapp,* 101 .Minn., 432, 112 N. W., 989; *Benefit Society* v. *Lesser,* 105 Mich., 716, 63 N. W., 977.

But in *State* v. *O'Brien,* 94 Tenn., 79, 28 S. W., 311, 26 L. R. A., 252, this court said:

"Whatever others might say about the right of this foreign corporation to come into this State to carry on its business and acquire property interests without first having complied with the requirements of the act of 1891, at any rate the defendant's mouth is closed when, as agent, he receives the money of and for this corporation, and feloniously appropriates it to his own use. The wrongful act of the principal cannot be invoked as a protection against the still more wrongful act of the guilty agent. To him, under such circumstances, the rule of estoppel applies."

While *State* v. *O'Brien* was a criminal case, the court in the later civil case of *Insurance Co.* v. *Kennedy,* 96 Tenn., 711, 716, 36 S. W., 709, correctly, albeit as *dictum,* said in respect of such a defense by an agent of a noncomplying foreign corporation that he would be concluded on the authority of the *O'Brien Case.* And the cases from several jurisdictions deny the defense to an agent in civil cases. *Penn Mutual, etc., Co.* v.

*Bradley,* 21 N. Y. Supp., 876,[1] 142 N. Y., 660, 37 N. E., 569; *U. S. Express Co.* v. *Lucas,* 36 Ind., 361; *Walker* v. *Kremer,* 29 Fed. Cas., No. 17076; *De Lavol Separator Co.* v. *Walworth,* 13 Brit. Columbia, 295. And see *Holleman* v. *Bradley Fertilizer Co.,* 106 Ga., 156, 32 S. E., 83, and note to *Moss Mercantile Co.* v. *First Nat. Bank,* 47 Or., 361, 82 Pac., 8, 2 L. R. A. (N. S.); 657, 8 Ann. Cas., 572.

This accords with those rulings made in the analogous cases which involve an attempted defense upon the part of the agent that the fund in question was realized as the result of an illegal transaction, and where it is held not to be maintainable, that the money cannot be retained on the ground of the illegality of the original transaction, but that the law will raise an indebtedness in *assumpsit* as against the defendant. *Bendet* v. *Ellis,* 120 Tenn., 277, 296, 111 S. W., 795, 18 L. R. A. (N. S.), 115, 127 Am. St. Rep., 1,000; *Brooks* v. *Martin,* 2 Wall., 70, 17 L. Ed., 732; *Pointer* v. *Smith,* 54 Tenn. (7 Heisk.), 737.

We therefore rule against this contention of the defendant.

It is next urged in behalf of the defendant Agnew, as noted above, that the profits sought to be recovered of him were not produced by him while acting within the scope of his duty; and that the lines of endeavor in which the money was made were lines that were *ultra vires* the complainant corporation. Therefore,

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 66 Hun, 635.

that the law will not permit that corporation to violate its charter by taking the profits or proceeds of his transactions not originally competent to the company, and which, therefore, arise from undertakings not in conflict with the business of the company.

It should be kept in mind that the profits were realized in transactions conducted by the defendant, not in his own name, but in the name of the company's boat, with the company's money, and aided in most of them by the work of the company's employees. The learned counsel of defendant Agnew cite no cases that deny a recovery under such circumstances, and it would be a reproach to the law if they could. The cases relied on by them are such as define in this connection what is meant by the term "in execution of the agency," and whether or not the act complained of fell within the scope of the official business, such as *Latta* v. *Kilbourn,* 150 U. S., 524, 14 Sup. Ct., 201, 37 L. Ed., 1169; *Aas* v. *Benham,* 2 Ch. D. (1891), 244; *Kellogg, etc., Co.* v. *Webster Mfg. Co.,* 140 Wis., 341, 122 N. W., 737, and we may add *Case* v. *Kelly,* 133 U. S., 21, 10 Sup. Ct., 216, 33 L. Ed., 513.

The transactions, if conceived of as having been done for or in behalf of the complainant company, were not *malum in se.* If the fact that money withheld by an agent came from the prosecution of an illegal enterprise constitutes no defense, as we have seen, we fail to see how the fact that the funds here sought to be recovered were the product of merely *ultra vires* transactions should do so. The defendant is bound, not by

132 Tenn.18

reason of the illegality of such course of conduct, but by reason of his agency.

In Thompson on Corporations, sec. 2849, it is said:

"On the clearest principle an officer cannot withhold from a corporation the proceeds of a transaction conducted by him for the corporation on the ground that the transaction was *ultra vires*. Thus, for example, where a bank, without having power to do so, negotiated bonds, it was held that the cashier who performed the work could not retain the profits of the transaction as his own on the theory that the transaction was *ultra vires* the bank. If the transaction was *ultra vires*, it was not *malum in se,* and under the prevailing rule the question could not be raised by the State. So, the president of a corporation was not allowed to set up the doctrine of *ultra vires* as a defense when sued for the unlawful conversion of the stock."

It has been ruled that land, given the president of a railroad corporation in consideration of the company's extending its line of railway to the property of the grantor, belongs to the company, even though it was without power under its charter to acquire such property. *Scott* v. *Farmers,' etc., Bank,* 97 Tex., 31, 75 S. W., 7, 104 Am. St. Rep., 835.

In *Goodhue, etc., Co.* v. *Davis,* 81 Minn., 210, 83 N. W., 531, Davis was sued for profits made while serving as manager, and defended on the ground that the corporation was without power to do the things that he had done in the production of the profits. The court said:

"It is not necessary to determine whether the corporation had power to purchase grain and sell it for profit. It may be conceded that it had not, yet the agent cannot, while engaged in the service of his employer or principal, act in the capacity of both buyer and seller, without such principal's consent; and . . . in such cases 'all profits made in the course of an agency belong to the principal, whether they are the fruits of the performance or of a violation of the agent's duty.' "

In the case of *Mt. Vernon Bank* v. *Porter*, 52 Mo. App., 248, 65 Mo. App., 448, 148 Mo., 176, 49 S. W., 982, the facts were that the cashier of a bank negotiated a sale of bonds and received $1,000 therefor and refused to account to the banking company on the ground that what he had done was beyond the scope of his duty as cashier and not within the line of the bank's business, according to its charter. It was said on the point:

"The contract of the bank (through its officers) to sell the bonds was not *malum in se,* and, if it be conceded that it overstepped its chartered powers in so doing, it was a transgression for which it is answerable to the State alone. . . .

"The transaction was not *malum in se,* and the contract between the bank and the owners of the bonds has been fully executed, and we can discover no reason why the doctrine of *ultra vires* should shield defendant."

And see *U. S. Express Co.* v. *Lucas,* supra; *Fisk* v. *Patton,* 7 Utah, 409, 27 Pac., 1, and *Hertzler* v. *Geigley,* 196 Pa., 419, 46 Atl., 366, 79 Am. St. Rep., 724.

The effort of the defendant to escape civil liability by advancing that the public policy touching corporate encroachments and excesses forbids his being called to a reckoning makes pertinent the observation of Lord MacNaghten in *Nordenfelt* v. *Maxim, etc., Co.,* [1894] A. C., 535:

"There is a homely proverb current in my part of the country which says you may not 'sell the cow and sup the milk.' It seems almost absurd to talk of public policy in connection with such a case. It is a public scandal when the law is forced to uphold a dishonest act."

There is more than one phase to sound public policy. One of these that ought to be paramount is that courts should close their ears when dishonest men attempt to wrest and quote rules of law in an effort to shield them from the consequences of their misdeeds.

The plea of *ultra vires* should not, as a general rule, prevail when interposed against a corporation when it would not advance justice but result in injustice. *Carson City Sav. Bank* v. *Carson, etc., Co.,* 90 Mich., 550, 51 N. W., 641, 30 Am. St. Rep., 454. It cannot avail here.

Affirmed.