WAYNE LLOYD, Appellee, v. THAD A. WISEMAN, Appellant.—368 S. W. (2d) 303.

Eastern Section.

Heard by Western Section, at Knoxville February 3, 1963.

Certiorari Denied by Supreme Court May 10, 1963.

Rehearing Denied by Supreme Court June 4, 1963.

Robert M. May, Jonesboro, for appellant.

Mark C. Hicks, Jr., Jonesboro, and H. Dennis Erwin, Erwin, for appellee.

BEJACH, J. This cause involves an appeal by Thad A. Wiseman, who was defendant in the lower court, from a decree against him recovered in the Chancery Court of Washington County, Tennessee, in the sum of $7,-793.33, in favor of Wayne Lloyd who was complainant in the lower court. In this opinion, the parties will be designated as complainant and defendant, or called by their respective names, complainant being referred to as Lloyd and the defendant as Wiseman.

Complainant filed his bill on July 1, 1957, seeking a recovery from defendant in the sum of $7,956,66, which represented one-third of the profits made by a partnership consisting of defendant, complainant and one, V. M. McCracken, not previously accounted for. Complainant's bill alleges that in the early part of 1955, complainant, together with defendant and V. M. McCracken, entered into a commercial undertaking for their joint profit for buying, subdividing, and selling real property in Washington County, Tennessee and adjacent territory, the

profits from which were to be divided equally by the three partners. Under the terms of said partnership agreement, Wiseman was to furnish the money necessary for the undertaking, and complainant and McCracken were to perform the work incident thereto. Title to property purchased was to be taken in the name of Wiseman, who along with McCracken held, at that time, a license as real estate dealer and broker. The bill alleges that said partnership venture had been successful, having had some seventeen transactions, listed in the bill as (a) to (q), and that the profit from same had been divided equally between the partners on the first thirteen of said transactions, listed in the bill as (a) to (m), inclusive. The recovery sought was alleged to be one-third of the profits resulting from transactions listed as (n), (o), (p), and (q).

Defendant's answer denies the existence of the alleged partnership and avers that defendant had paid for all services rendered by complainant to defendant. The answer also denies complainant's right to recover in this cause on the ground that he had failed to take out a license as a real estate agent, salesman, or broker.

The proof was taken by depositions, and after a hearing of the cause the Chancellor decided in favor of complainant and awarded him a decree for $7,793.33.

Defendant, as appellant, has filed in this court two assignments of error. The first of these complains of findings of fact made by the Chancellor, and the second denies complainant's right to maintain the suit because of failure to take out a real estate lcense.

In our opinion, the clear preponderance of the evidence sustains the Chancellor's finding of facts. Accord-

ing to the testimony of McCracken, one of the members of the partnership claimed by complainant, who is not a party to this suit, and not interested in the outcome of same, he, (McCracken), and defendant had been partners in the real estate business since 1952, and that in 1955 complainant was taken into said partnership. From the testimony of McCracken, we quote as follows:

"Q 24. Then did you become a partner with Mr. Wiseman in the operation of Jonesboro Realty Company in 1952?

"A To the best of my knowledge.

"Q 25. Were you a partner operating with the defendant, Thad A. Wiseman, in Jonesboro Realty Company in the first part of 1955?

"A Yes sir.

"Q 26. I hand you herewith what purports to be a certified copy of a license issued by the Washington County Court Clerk showing that Thad A. Wiseman and V. M. McCracken, doing business as Jonesboro Realty Company, had paid their fees, and ask you if that is the Jonesboro Realty Company and you are the V. M. McCracken referred to therein and the defendant, Thad A. Wiseman, is the Thad A. Wiseman referred to therein?

"A Yes sir.

"Q 27. Will you file that as Exhibit 1 to your direct examination?

"A Yes sir.

"Q 28. Now, up until the early part of 1955 when you and Mr. Wiseman were operating the Jonesboro

Realty Company as a partnership, what type business did you do, just generally?

"A Well, we sold real estate, bought real estate, sold it, and traded in real estate, and bought and sold and listed and sold for commissions, any way we could make a dollar."

McCracken testified that in the Spring of 1955 he discussed the possibility of getting the complainant, Wayne Lloyd, to enter into a real estate operation with them. With reference to this, McCracken testified as follows:

"Q 36. What did you tell Mr. Wiseman about Lloyd?

"A I told him that I believed we could get him in there with us, wasn't that something like it?

"Q 37. Now you can't do that.

"A And Mr. Wiseman told me to have him see him.

"Q 38. Did you carry the request of Mr. Wiseman to Mr. Lloyd?

"A Yes sir.

"Q 39. Did Mr. Lloyd and Mr. Wiseman get together shortly after that;

"A Yes sir.

"Q 40. Were you present?

"A Yes sir.

"Q 41. Now, did you and Mr. Lloyd and Mr. Wiseman, as a result of the conversation, enter into a joint undertaking of any kind or character?

"A Yes sir.

"Q 42. Now, just tell the Court through this disposition what the joint enterprise or joint undertaking that you and the plaintiff, Mr. Lloyd, and the defendant, Mr. Wiseman, entered into?

"A Well, Mr. Lloyd and Mr. Wiseman and myself agreed to go ahead and take him in there and let him do some trading and help us out, and go ahead and operate there, and Mr. Wiseman furnish the money and us do the work.

"Q 43. Now, by us, who do you mean?

"A Mr. Lloyd and myself.

"Q 44. And what was to be the distribution of the profits, if any?

"A We were to go thirders.

"Q 45. And what would be the distribution of the losses, if any?

"A Thirders."

Complainant's own version of the agreement, as testified to by him, was as follows:

"Q 35. When you first entered into this agreement in March of 1955, will you please state again exactly what that agreement was?

"MR. MAY: We except to the foregoing question for the reason that it is purely a matter of repetition and the witness has been examined at great length from the outset.

"A The agreement that we was to buy, sell and deal in real estate, McCracken, Wiseman and myself, and

we was to go thirders on the profits, thirders on the loss, which we have never had a piece of real estate or any trade that we have ever made since we have been together that has lost money. It all made. I've been settled with, there was no argument about it, we always settled with cash. If I had the money when it came time to settle we counted it out and settled it. If McCracken had it or if Wiseman had it, that's the way we settled. Our labor against his money was the agreement."

In 1957, defendant purchased McCracken's interest in the partnership for $1,500, and undertook to purchase complainant's interest for the same amount of money, but complainant refused to sell at that figure, and later filed suit in the instant case. The instrument evidencing McCracken's transfer of his interest in the partnership, which was filed as an exhibit to the deposition of defendant, is as follows:  -

"May 8, 1957, I, V. M. (Happy) McCracken, do hereby agree to sell the interest that I now have, had had or may have to all notes, papers, deeds or other pertaining to the business of Jonesboro Realty Company, or Thad Wiseman for the sum of $1500.00 (Fifteen Hundred Dollars) cash in hand. This the 10th day of May, 1957.

"V. M. McCracken"

Complainant's testimony with reference to defendant's offer to buy his interest for $1,500 is as follows:

"Q 236. Mr. Lloyd, you mentioned Mr. Wiseman coming to you. Explain in detail the whole circumstances, time, place and so forth.

"MR. MAY: Exception to the foregoing question and any answer thereto on the ground that the same obviously relates and attempts to compromise conflicting claims.

"Q 237. Just go ahead.

"A He come to me and offered me $1500, he come to me and said I would like to buy you out as partners. He said he had bought McCracken out and he would like to buy me, and he offered me $1500.

"Q 238. Was that in cash?

"A He offered me $1500 in cash.

"Q 239. Did you see the money?

"A I did. And he had a paper for me to sign and it read that he was buying all mortgages, deeds, land and what had ever been or what would ever be.

"MR. MAY: Exception to the foregoing. The paper would be the best evidence.

"Q 240. Now go into detail and explain the offer.
"MR. MAY: Same exception.

"A I forget just how his paper read, just word for word I couldn't explain it, but he was buying all mortgages, deeds, notes and whatever we had, and he wanted to buy it for $1500. He told me that he bought McCracken out that morning for $1500. And I didn't take it. That's about all there was to his trying to buy me out.

"Q 241. When did this occur?

"A I believe on the 9th—I believe on the 9th of May, if I'm not mistaken, of last year, '57."

With reference to the amount of complainant's recovery, we quote from the Chancellor's opinion, as follows:

"The burden of proof is on the complainant to show the sums of money to which he is entitled. The records disclose that all profits have been split in accordance with the original agreement except the profits arising from four transactions; (1) The sale of property to Dallas Hardin, (2) The sale of property to Gimbley, (3) The sale of Bacon and/or Taylor property, and (4) The sale of what is referred to in the record as the 'Garbage Dump' to Mr. Wade Patrick. The complainant says that the profit on the sale of the Hardin property was $1650.00; the defendant says that the profit was only $480.00. The complainant says that the profit on the sale to Gimbley was $650.00, while the defendant says it was only $400.00. All parties agreed that the profit on the sale of the Bacon and/or Taylor property was $9,500.00, of which $2,000.00 had been divided between the parties prior to the suit, leaving a profit of $7,500.00 still held by the defendant. The complainant says that the profit on the purchase and sale of the 'garbage dump' property was $15,000.00 for the land itself, $750.00 for timber, and $1,500.00 from the sale of tobacco. The defendant admits the profit of $15,000.00 on the sale, but contends that the profits from the timber and the sale of tobacco was put back in the property.

"Taking the defendant's testimony, the profits amounted to: (1) The Hardin transaction $480.00, (2) The Gimbley transaction $400.00, (3) The Bacon

and/or Taylor transaction $7500.00, and (4) The Patrick transaction $15,000.00, making a total profit of $23,380.00. From the defendant's own conces- sions, the complainant would be entitled to one-third of $23,380.00, or $7,793.33.''

With reference to defendant's contention that complainant is not entitled to recover in this cause because of his failure to obtain a license, either as real estate broker or as salesman, reliance is placed on the provision of section 67-4203, T.C.A., Item 90, and sections 62-1301— 62-1328, T.C.A. Section 67-4003 is a part of the Revenue Act of 1937, and requires that persons engaged in the business of buying and selling real estate pay a license fee. This court held, however, in the case of Smith v. Guy, 24 Tenn. App. 352, 144 S. W. (2d) 702, in an opinion written by Judge McAmis, now Presiding Judge, that the license required by that statute was not necessary where the parties involved were selling their own land. The facts in the case of Smith v. Guy were quite similar to those involved in the instant case. Smith was the administrator of John H. Kress, who, along with one Kemler, had been in partnership with the defendant Guy for the purpose of negotiating and acquiring by deeds to defendant Guy certain phosphate properties in Johnson County, Tennessee. Under the terms of the partnership agreement, Guy was to furnish the capital for the carrying on of the enterprise, and after the repayment to him of the capital invested, plus 6% interest, profits were to be divided 60% to Guy and 20% each to Kress and Kemler. After Kemler's death, Kress agreed orally to sell to Guy his interest for $1,000. When Guy repudiated this agreement, Kress brought suit to recover the $1,000 involved. Kress died before the cause was tried, but it

was revived in the name of his administrator, J. H. Smith, who recovered a decree for the $1,000 involved. On appeal, the same contention was made as in the instant case, viz., that Kress was not entitled to recover because of having failed to secure a real estate license. From the opinion of Judge McAmis rejecting this contention, we quote as follows:

"We find without merit the insistence that compainant's bill should have been dismissed because of the non-payment of a real estate broker's license fee. According to the briefs the parties were dealing for themselves, and complainant was not engaged in the business of a broker. We are cited to no evidence in support of the defendant's insistence that complainant was, under the facts appearing in the record, subject to the payment of such fee. We think the decree in this case is just. The implication arises from the proof that defendant was unable to sell the phosphate upon the properties in question to advantage after the purchase of Kress' interest and therefore sought to avoid payment of the agreed consideration. If his expectations of disposing of the phosphate had been met, doubtless the agreed sum would have been paid without difficulty." Smith v. Guy. 24 Tenn. App. 356, 144 S. W. (2d) 704.

In the instant case, instead of selling his interest in the partnership for the $1,500 offered by defendant, complainant has preferred to sue for his share of the profits earned. We think the decree of the lower court in his favor was proper.

After the enactment in 1937 of Item 90, section 67-4003, which is part of the Revenue Act of that year, the Legis-

lature in 1951 enacted sections 62-1301 to 62-1328 T.C.A., dealing with real estate brokers. This statute, however, provides, expressly, that it shall not be applicable to any person, partnership, association or corporation dealing with its own property, and requires that persons covered by the Act shall be doing business for others.

■ Even if complainant were liable for the real estate license, however, defendant, under the facts of the case at bar, would be estopped to set up that defense against him. In the case of Brooks v. Martin, 2 Wallace 70-87, 17 L. Ed. 732, the Supreme Court of the United States held that where one partner, associate or coadventurer was suing another for his share of the profits resulting from the buying up of land warrants of soldiers returning from the Mexican War in violation of a federal statute which prohibited the purchase of such warrants, that the partner complaining was entitled to recover his share of the profits already accrued, notwithstanding the illegality of the transaction. The Supreme Court of Tennessee has made similar rulings in the cases of Pointer v. Smith, 54 Tenn 137; State v. O'Brien, 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252, and Memphis & Ark. River Packet Co. v. Agnew, 132 Tenn. 265, 177 S. W. 949, L. R. A. 1916A, 640.

Our conclusion is that, both under the facts of the case and under the law applicable thereto, complainant was entitled to recover from the defendant, and that the decree of the lower court in complainant's favor must be affirmed.

The costs of the cause, including those of the lower court as well as those of the appeal, will be adjudged against the defendant, Thad A. Wiseman, and the surety on his appeal bond.

Avery, (P. J. W. S.), and Carney, J., concur.