The **APPALACHIAN CONTRACTING COMPANY**

v.

Charles **COX** and Valley Fuel Company, Inc.

Civ. No. 3-75-36.

United States District Court, E. D. Tennessee, N. D.

June 19, 1975.

---

David E. Rodgers, Kramer, Johnson, Rayson, Greenwood & McVeigh, Knoxville, Tenn., for plaintiff.

Joseph B. Yancey, Knoxville, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action was filed by the Appalachian Contracting Company against Charles Cox and Valley Fuel Company, Inc., seeking an injunction prohibiting defendants from engaging in coal brokering activities allegedly in competition with Appalachian and seeking damages for loss caused to plaintiff by these activities. Jurisdiction is based on diversity of citizenship and the amount in controversy. 28 U.S.C. § 1332(a). The case was tried to the Court without a jury.

Appalachian claims that Cox breached the terms of the Employment Agreement which he had entered into with it on August 4, 1972, by violating the covenant not to compete contained therein. It is the further contention of Appalachian that Cox also breached a common law duty of loyalty and fidelity to his employer by receiving profits that came to him by virtue of his employment and in the course of his performance of service.[1]

Cox denies that he breached the terms of the covenant not to compete. He contends that it only prohibited him from engaging in the "coal mining business" in competition with Appalachian and his activities of brokering coal through Valley Fuel were not activities within the meaning of the term "coal mining business" as expressed in the covenant not to compete. Cox also denies that he breached any common law duty owed to his employer because he says that he only took advantage of opportunities for coal brokerage which Appalachian and its sister subsidiaries had rejected.

The parties entered into extensive pretrial stipulations and the following facts are undisputed. Under the terms of the Employment Agreement, Cox was to be compensated by a salary of not less than $400.00 per week and he was to receive on or before January 30th of each year a bonus of ten cents per ton for each ton of coal mined and removed exceeding 240,000 tons during the preceding calendar year. The agreement was to be in effect from August 4, 1972, until August 3, 1977. Cox received $28,000.00 in salary and bonuses from Appalachian in 1974. Prior to his employment with Appalachian he had received an average salary of $4,400.00 per year from C & R Coal Company for the years 1970 through 1972.

---

1. Although Valley Fuel Company, Inc., was originally a party defendant in this action, plaintiff has abandoned its claim against it.

On August 4, 1972, when Cox signed the Employment Agreement, he and his brother, Robert Cox, sold their coal mining operation, C & R Coal Company, to Appalachian for a sum exceeding $600,000.00, including principal and interest. The brothers had been sole shareholders and principals of C & R with Robert overseeing the strip-mining operation and Charles supervising the office and tipple facility. Under the Employment Agreements both signed with Appalachian they were to carry out substantially the same duties while employed by it. Appalachian's employment records listed the brothers as supervisors of the Jellico operation and both were full-time, salaried employees of Appalachian.

Under the terms of his Employment Agreement, Charles Cox agreed to "perform and discharge the duties pertaining to the operation of the coal properties and facilities as described in the . . . Sales Agreement" between Appalachian and C & R. Further, Charles' duties would be "substantially the same nature" as performed by him for C & R.

Paragraph five of the Employment Agreement provides:

"*Covenant Not to Compete.* For a period of five years from the date of this Agreement, the Employee shall not directly or indirectly engage in the coal mining business in Campbell County, Tennessee, or in Whitley County, Kentucky. In the event of a breach or threatened breach by the Employee of the provisions of this paragraph, Appalachian shall be entitled to an injunction restraining the Employee from such breach. Nothing herein shall be construed as prohibiting Appalachian from pursuing any other remedies available to Appalachi-

an for breach or threatened breach. The provisions of this paragraph shall continue in full force and effect, notwithstanding any termination of the Agreement pursuant to the provisions of paragraph 2 hereof."

During the period from August 4, 1972, (the date Cox was employed by Appalachian), until February 1973 approximately 97% of the coal sold by Appalachian was self-produced and the remaining 3% was brokered coal.[2] After February 1973, the coal marketing and brokerage responsibilities of all coal produced or purchased by Appalachian and its sister subsidiaries was taken over by Texas Energies, Inc.[3] As part of his employment responsibilities with Appalachian, Cox assisted Texas Energies in the marketing of Appalachian's coal as he had done for Appalachian prior to the formation of Texas Energies.

Cox formed Valley Fuel Company in March 1974 at a time when he was becoming increasingly dissatisfied with his job at Appalachian. Valley Fuel is a closely-held corporation of which Cox was sole stockholder, director, and President. From the time of its formation through February 1975, Valley Fuel engaged in coal brokerage by purchasing coal on its own accord and selling it to others. Net profits during this period were stipulated to be $85,941.11. Appalachian did not become aware of these brokerage activities until late in 1974.

*Findings of Fact*

The third issue as stated in the pretrial order is as follows: "Is 'coal brokerage' a part of the term 'coal mining business' as used in the contract." A number of witnesses testified for defendant that coal brokerage was not included within the meaning of the term

2. The parties did not dispute that "coal brokerage" includes both the purchase of coal from others and sale thereof as well as the sale of coal on a commission basis. A "coal broker," generally speaking, is one who finds a willing buyer for a willing seller or vice versa. See *Miller v. Insurance Company of*

*North America,* 211 Tenn. 620, 366 S.W.2d 909 (1963).

3. Both before and after acquisition of the assets of C & R, Appalachian was a wholly-owned subsidiary of Kaneb Services, Inc. Texas Energies was also a subsidiary of Kaneb.

"coal mining business" as used in the Employment Agreement. Other witnesses for defendant were ready and willing to so testify and the substance of their testimony was conceded by plaintiff. Several of plaintiff's witnesses testified to the contrary, however, that coal brokerage was included in the term "coal mining business."

The evidence showed that C & R Coal Company, with which Cox was associated prior to August 4, 1972, was engaged in the coal mining business, including, but not limited to, securing coal properties, extraction of coal, and marketing and brokerage of coal. Cox's duties with Appalachian were to be "substantially the same nature" as he had performed for C & R. Under these facts and circumstances the term "coal mining business" as expressed in the covenant not to compete included coal brokerage. Moreover, the undisputed evidence showed that Cox assisted Appalachian and later Texas Energies in acquiring markets for coal.

Cox used Valley Fuel as a media through which he bought and sold coal on a fee or commission basis while he was a full-time employee of Appalachian. Many of the customers of Valley Fuel had been customers of Appalachian. Cox used Appalachian's tipple facility without the latter's knowledge to process coal of Mr. Ernest Viers who had sold coal to Appalachian in the past. Appalachian first became aware of Cox's brokerage activities in late 1974 by way of information from third parties. When confronted with this information, Cox frankly explained his activities and then offered to pay for the use of Appalachian's facilities.

Although there was evidence that from time to time officials at Texas Energies would reject Cox's suggestions for purchasing coal, it is significant that Cox failed to inform Appalachian or Texas Energies that on these occasions he would make use of the potential purchases for brokerage of the coal through Valley Fuel for his own profit.

He disclosed his activities only after Appalachian learned of them through third persons. Valley Fuel made a net profit of over $85,000.00 in some eleven months of operation. It is unlikely that Appalachian would entirely reject such profit potential.

### Conclusions of Law

■■ The issues of law as formulated in the pre-trial order are as follows:

(1) Did the defendant violate the terms of his Employment Agreement not to compete?

(2) Did the defendant violate any duty or obligation owed to his corporate employer by engaging in activities in competition with his corporate employer; if so, what is the measure of damages?

The great preponderance of the evidence shows that the answer to both these questions is in the affirmative. Cox breached the terms of his agreement not to compete by forming Valley Fuel Company and engaging in coal brokerage activities for profit in Campbell County, Tennessee, and Whitley County, Kentucky. Furthermore, by virtue of his position as Superintendent of Appalachian's Jellico operation, Cox was under a duty to make available to Appalachian any opportunity for profit which the corporation could have pursued, including opportunities for the purchase and resale of coal. *Memphis and Arkansas River Packet Co. v. Agnew*, 132 Tenn. 265, 177 S.W. 949 (1915); 53 Am.Jur.2d *Master and Servant* § 101 (1970). By clandestinely appropriating these opportunities for his own profit and dealing with customers of his employer, Cox violated the duties and obligations of his employment. *Meeker v. Stewart*, 188 F.Supp. 272 (D.D.C.) *aff'd*, 110 U.S.App.D.C. 161, 289 F.2d 902 (1961).

Plaintiff is entitled to an injunction prohibiting defendant from either directly or indirectly competing with it in

the coal mining business, including coal brokerage, in Campbell County, Tennessee, or Whitley County, Kentucky, through August 3, 1977. Further, plaintiff is entitled to damages in the stipulated amount of $85,941.11.

Counsel will prepare a proper order for approval.