**HERMITAGE HOUSE SQUARE, L.P., Plaintiff/Appellant,**

v.

**Walter D. ENGLAND, Defendant/Appellee.**

Court of Appeals of Tennessee, Middle Section.

March 22, 1996.

Permission to appeal Denied by Supreme Court Sept. 3, 1996.

---

Thomas F. Bloom, Nashville, for plaintiff/appellant.

Thomas E. Stewart, Madison, for defendant/appellee.

## *OPINION*

CANTRELL, Judge.

The payee on a promissory note sued the maker in General Sessions Court for payment of the last $1,500 due on it. The court entered judgment for the payee. The maker appealed, and filed a complaint in Circuit Court which was consolidated with his appeal. The complaint alleged that the obligation on the note could not be enforced, because it represented payment on an illegal transaction. The maker's argument was that the note represented a commission on a sale of real estate, in favor of an individual who was not a real estate broker or agent, in violation of Tenn.Code Ann. § 62–13–101 et seq.

The payee admitted that he was not a broker or agent, but denied that the note represented a broker's commission. He contended rather that the payment was in consideration of his relinquishing his interest in the enterprise that had purchased the property. The trial court found that the note did not represent an illegal commission. We affirm.

### I.

Walter England, the payee on the note in question, is a dealer in automobiles and recreational vehicles, whose place of business is located directly across Lebanon Road from the Hermitage Motel. Charles Turner was the owner of the Hermitage Motel and of adjoining property containing a restaurant and antique shop. He and Mr. England were acquaintances of long standing, and when he was checking on the motel, Mr. Turner would frequently cross the road to chat with Mr. England.

Mr. Turner was near retirement, and he found that the rewards of operating the motel were outweighed by the headaches, and by the inconvenience of managing its operations from his home in Old Hickory. He told Mr. England that he had decided to sell the motel property, and Mr. England expressed an interest in acquiring it. Though the property had been appraised for $3 million, Mr. Turner said he was willing to sell it to Mr. England for $1.6 million. Mr. England told Mr. Turner that he could not afford to purchase the $1.6 million property by himself, and would seek a partnership with other investors. Mr. Turner gave Mr. England a thirty day option to purchase the property for $1.6 million. The option was extended orally and when another investor appeared, the parties negotiated in good faith until the deal closed. There is no suggestion in the record that Mr. Turner employed Mr. England as an agent or broker, or that they ever negotiated a fee of any kind.

Mr. England contacted the appellant, James C. Patterson, an attorney licensed in three states, and the general partner in an enterprise called Beach Capital Ventures, Inc. Mr. England supplied Mr. Patterson with information about the motel property, and the appellant decided to pursue the investment opportunity in tandem with Walter England. Mr. England played an active role in negotiating the terms of purchase, which were memorialized in a letter of intent drafted by Mr. Patterson.

The letter of intent contemplated a lease purchase by an as-yet-to-be formed limited partnership called Hermitage House Square Limited Partnership. Mr. Patterson signed on behalf of the limited partnership. Mr. Turner and his wife, agreed to the terms and affixed their signatures to the letter of intent on September 27, 1991.

At about the same time, Mr. Patterson sent a letter to Mr. England, confirming an agreement reached during an earlier telephone conversation. The letter outlined the

terms of Mr. England's participation in the proposed enterprise, "... should the acquisition of Hermitage House Square proceed." Mr. England was to acquire a 15% equity share in the Hermitage House Partnership. He was also to serve as property manager of the motel at a base salary of $35,000. Mr. England could increase his equity share to 18%, and receive a bonus that would be added to his salary according to a formula based on the net profit earned by the motel.

## II.

On October 11, 1991, the Tennessee Secretary of State issued a certificate of limited partnership for Hermitage House Square L.P. The general partner named in the certificate was Beach Capital Ventures, and James Patterson signed in his capacity as Chairman of the General Partner. The limited partner or partners were not identified at the time. Though Hermitage House Square L.P. is the nominal party in this case, we will continue to refer to Mr. Patterson as the appellant, for he was obviously the driving force behind both the limited partnership and the current appeal.

Mr. England subsequently decided that he did not want to be a full-time motel manager. On February 15, 1992, Charles Turner conveyed the Hermitage Motel to Hermitage House Square L.P. On the same day, Mr. Patterson executed a promissory note to Mr. England for $20,000 in the name of the limited partnership "for value received" and also gave Mr. England a check for $5,000. The note was to be paid in four successive monthly $5,000 installments beginning on March 1, 1992.

Though he did not follow the schedule set out in the original note, Mr. Patterson made more-or-less regular payments to Mr. England. The terms of payment were altered by agreement of the parties on June 8, 1992, and $500 was added to the principal amount. By October 2, 1992, Mr. England had been paid a total of $19,000 on the note.

Mr. Patterson and Mr. England subsequently had a falling out, and Mr. Patterson stopped making payments. Mr. England then sued Mr. Patterson on the note in the Davidson County General Sessions Court,

and received a judgment for $1,500 plus interest, costs and reasonable attorney fees. Mr. Patterson appealed to the Circuit Court and filed a complaint, which alleged that he was not liable for the debt, because the consideration on the note was an illegal commission on the sale of real estate.

## III.

The Tennessee Real Estate Broker License Act of 1973, Tenn.Code Ann. § 62–13–101 et seq. prohibits any individual from acting as a real estate broker without first obtaining a license. An unlicensed person who performs the services reserved by the Act for licensed brokers may not sue to recover compensation for any prohibited act, and may be subject to penalties that include return of treble the amount collected as compensation for any such services, payment of a fine, and even imprisonment. Tenn.Code Ann. § 62–13–110.

The definition of a broker found in Tenn. Code Ann. § 62–13–102(2)(A) describes the real estate transactions whose performance is restricted to licensed professionals:

> (2)(A) "Broker" means any person who for a fee, commission, finders fee or any other valuable consideration, or with the intent or expectation of receiving the same from another, solicits, negotiates or attempts to solicit or negotiate the listing, sale, purchase, exchange, lease or option to buy, sell, rent or exchange for any real estate or of the improvements thereon ..., or who advertises or holds himself out as engaged in any of the foregoing; ...

The statute encompasses a great variety of transactions, but the restrictions on those transactions only apply where an individual is acting for another; where he is acting on his own behalf, there is no requirement that a person acquire a real estate license before negotiating a conveyance of land. *Lloyd v. Wiseman*, 51 Tenn.App. 401, 368 S.W.2d 303 (1963); *Smith v. Guy*, 24 Tenn.App. 352, 144 S.W.2d 702 (1940).

In both of the above-mentioned cases, the plaintiffs negotiated for the purchase of real property by enterprises of which they were a part. When their partners refused to pay

them money to which the plaintiffs felt their participation in the respective enterprises entitled them, they sued. The defendants argued that the plaintiffs could not recover because the services they performed were those normally associated with real estate brokerage, and they were not licensed as brokers. However, the court found that the licensing statute did not not prevent them from recovering, because they were dealing for themselves as well as for others. Although these cases involved the interpretation of an earlier version of the current statute, they are still good law.

## IV.

■ In the present case, Mr. England contended that in negotiating the purchase of the Hermitage Motel he was acting to further his own interests as well as Mr. Patterson's. In substance the transaction was a simple one: Mr. England obtained an option on the motel and found a "money partner" to help him make the acquisition. In return for his option Mr. England was to receive an interest in the partnership formed to acquire title to the property. Although the trial judge ruled inadmissible the details of the option because it had been lost, the record is clear that the option did exist and that Mr. Turner went to some pains to protect Mr. England's interests when Mr. Patterson began conducting the negotiations. The testimony of Mr. Turner, and Mr. Patterson's letter outlining the appellee's equity share in the project and his proposed role in managing the motel support Mr. England's contention. The lack of any contract or other document in the record containing a reference to a brokerage arrangement or to a fee for services, strengthens his argument.

The appellant makes much of the court's finding that Mr. England did not become a partner at the time Mr. Patterson acquired a certificate for Hermitage House Square L.P., or at any time thereafter. We note that Mr. Patterson testified on cross-examination that the sole limited partner withdrew immediately after formation, to be replaced by other limited partners, and that the court also found that Mr. England would have received an equity share at the time the sale closed, if

he had not surrendered his right prior to that time.

Mr. Patterson argues that his agreement to give Mr. England an equity interest in the enterprise as compensation for negotiating the transaction would still constitute an illegal commission, just as a cash payment would. He has directed our attention to cases from other jurisdictions that have real estate brokerage licensing laws similar to our own, to demonstrate that the valuable consideration that constitutes a broker's fee may take almost any form, including an equity interest in the acquiring enterprise. See *Wilkins v. Heebner*, 331 Pa.Super. 491, 480 A.2d 1141 (1984).

But the appellant's argument does not resolve the critical question as to whether Mr. England was acting on his own behalf when he acquired the inchoate interest in question, or whether he was merely acting as an agent for Mr. Patterson or Mr. Turner. This is a question of fact, which the trial court found adversely to the appellant, and which is presumed on appeal to be correct, unless the preponderance of the evidence is otherwise. See Rule 13(d) Tenn.R.App.P.

## V.

■ The present case began as a suit on a note in General Sessions Court. It is not clear from the record if the defendant advanced an affirmative defense at this early stage in the proceedings, but if he had, the burden of proof would have been on him to prove the illegality of the underlying contract, as the instrument bore on its face an unconditional promise to pay.

The case continued with Mr. Patterson filing a complaint in Circuit Court. The burden remained on him to establish by a preponderance of the evidence that the relationship between himself and Mr. England was that of principal and broker. Mr. Patterson testified unequivocally that this was the sum and substance of the business relationship between the parties, but as an attorney he was well-versed in the elements of the claim he was trying to establish, and the court found his testimony not to be credible.

The court found more credible the testimony of Mr. Turner and Mr. England, to the effect that Mr. England proposed buying the property himself, that the two of them agreed on a price, and that Mr. England sought other investors to make acquisition of the property possible. The court concluded from this that Mr. England participated in the negotiations over the property to promote his own interest as an investor rather than to promote Mr. Patterson's interest by playing the role of broker. We do not find that the evidence preponderated against the trial court's finding.

## VI.

We affirm the trial court. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

TODD, P.J., KOCH, J. concur.